Cheryl D. PATTERSON–
KHOURY, et al.,

v.

WILSON WORLD HOTEL–CHERRY
ROAD, INC., a Tennessee
Corporation, et al.

Court of Appeals of Tennessee,
at Jackson.

April 23, 2003 Session.

July 28, 2003.

Application for Permission to Appeal
Denied by Supreme Court
Jan. 26, 2004.

Frank J. Glankler, Jr. and William L. Bomar, Memphis, Tennessee, for the appellants, Cheryl D. Patterson–Khoury and Naif S. Khoury.

Michael L. Robb, John H. Dotson and Bruce A. McMullen, Memphis, Tennessee, for the appellee, Wilson World Hotel–Cherry Road, Inc.

## OPINION

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

This appeal follows a premises liability action arising from an attack in defendant hotel's hallway in which plaintiff suffered multiple stab wounds. The jury found the hotel not negligent. Upon appeal, plaintiff raises issues of admission of evidence, non-exclusion of jury member, and jury instructions. We affirm.

This appeal follows a premises liability action commenced by Cheryl D. Patterson–Khoury (Mrs. Khoury) and her husband, Naif S. Khoury (collectively, "Khourys"), against Wilson Inns, Inc. and Wilson World Hotel–Cherry Road, Inc. (collectively, "Wilson World").[1] The action arises

---

1. The action originally was brought against Wilson Inns, Inc., Wilson World Hotel–Cherry Road, Inc., Edwardo Eugene Wells, Boris Smith, and John Doe. Eduardo Wells was voluntarily dismissed prior to trial. The trial court dismissed Boris Smith, a Wilson World

from an October 20, 1992, criminal attack in which Mrs. Khoury was robbed and stabbed in a hallway of the Wilson World Hotel. Her assailant was apprehended by the police and identified as Eduardo Wells.

Khourys submit negligence by Wilson World proximately caused and/or contributed to Mrs. Khoury's injuries and damages. They allege that Mrs. Khoury had made a reservation for a non-smoking room near the elevator on the atrium side of the hotel, but that she was assigned to room 363, a smoking room at the end of a hall on the non-atrium side. They further allege that Mrs. Khoury was misdirected to her room by the desk agent, Boris Smith, who told her that the closest route to her room was via an outside stairway. They submit that Mrs. Khoury requested a bellman to assist her with her luggage and locating her room, but no bellman was available. Mrs. Khoury proceeded alone up the outside stairwell, allegedly as directed by Mr. Smith, but the third floor outside door was locked. Mrs. Khoury returned to the lobby and took the elevator up to the third floor. Upon entering her room, Mrs. Khoury found it to be unacceptable, and proceeded to return to the lobby to insist upon a different room. She looked through the peephole, but her vision of the hallway was partially blocked by a wall. Upon exiting her room, she was assaulted by Edwardo Wells (Mr. Wells), who apparently had followed her into the hotel. Mr. Wells assaulted and robbed Mrs. Khoury, stabbing her multiple times. Her cries for help were heard by another guest. Mrs. Khoury contends this guest came to her assistance; Wilson World submits it was Mr. Smith who responded to Mrs. Khoury's cries for help. Mr. Smith chased Mr. Wells and facilitated his apprehension by police.

In their complaint, Khourys allege, *inter alia*, that Wilson World was negligent in the supervision of Boris Smith, that it negligently failed to warn guests that it was located in a high crime area, and that it breached its duty of care by failing to provide security for its guests. Khourys submit Mrs. Khoury has suffered serious and permanent physical and mental injuries as well as loss of income and earning capacity as a result of defendants' negligence. Khourys seek compensatory damage of $5,000,000 for Mrs. Khoury; compensatory damages of $5,000,000 for Mr. Khoury; and punitive damages of $2,500,000.

In its answer, Wilson World submits that Khourys failed to state a claim upon which relief can be granted. Wilson World denies allegations of negligence and submits that all injuries and damages to Mrs. Khoury are attributable to the criminal acts of Mr. Wells. In the alternative, Wilson World contends criminal acts of Mr. Wells are an intervening, superseding cause of Mrs. Khoury's injuries and further pleads contributory negligence of Mrs. Khoury.

Wilson World moved for summary judgment, contending there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. The trial court denied summary judgment. The trial court granted Wilson World's motions in limine to restrict Khourys' evidence of criminal activity to a time period before October 20, 1992, and to the area in the immediate vicinity of the hotel, excluding the Mall of Memphis.

employee, at the close of plaintiff's proof. That dismissal is not an issue on appeal. (John Doe was named in the complaint to give notice of a potential claim against any person or entity who may have employed Boris Smith at the time of the events complained of if Mr. Smith was not a Wilson World employee.)

The cause was heard by a jury during an eight day trial in November 2001. The jury returned a verdict in favor of Wilson World, finding it to be not negligent. Khourys filed a motion for a new trial and/or to alter or amend the judgment, submitting the trial court erred by restricting evidence of crime in the area to Wilson World–Cherry Road, its parking lot, and the adjacent Wilson Inn property, and by excluding evidence of crime at the Mall of Memphis. Khourys further contend the trial court erred in restricting the period of criminal activity, in giving a superseding cause instruction, in not excluding a juror for cause, and in not excluding testimony of Wilson World's expert witness. In their motion for a new trial, Khourys also contend the verdict was contrary to the weight of the evidence. The trial court denied Khourys' motion for a new trial and Khourys filed a timely notice of appeal to this Court.

### Issues Raised for Review

The issues raised for our review, as we re-state them, are:

(1) Admission of Evidence:
 (A) Whether the trial court erred by restricting evidence of criminal activity to that of defendant's hotel and parking lot and the adjacent property within a period of one year prior to the attack on Mrs. Khoury.
 (B) Whether the trial court erred by ruling plaintiff could not examine the defendant's general manager regarding his knowledge of criminal activity in the area and prior to the attack on plaintiff.
 (C) Whether the trial court erred by not excluding the testimony of Fred Del Malva, defendant's expert witness.

(2) Whether the trial court erred by not excluding Lisa L. Toldi from the jury panel for cause.
(3) Whether the trial court erred by giving a superceding cause instruction to the jury.

### Admission of Evidence

It is well-established that to establish negligence the plaintiff must prove: (1) a duty of care owed by defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. *McClung v. Delta Square Ltd.*, 937 S.W.2d 891, 894 (Tenn.1996). Duty of care has been defined by the courts as "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for protection against unreasonable risks of harm." *Id.* The question of whether a duty is owed is a question of law to be determined by the court. *Id.*

If the defendant has failed to exercise reasonable care, he has breached his duty to the plaintiff. *Id.* at 895. The determination of what is reasonable care "must be given meaning in relation to the circumstances. Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury." *Id.* Once the court has determined that the defendant owes a duty to the plaintiff, the questions of whether the defendant has breached his duty and thereby caused the plaintiff's injury are matters to be determined by the trier of fact. *See Staples v. CBL & Assoc.*, 15 S.W.3d 83, 91 (Tenn.2000); *Anderson v. City of Chattanooga*, 978 S.W.2d 105, 107 (Tenn.Ct.App.1998). Findings of fact by a jury shall be set aside only if there is no material evidence to support the verdict.

*Childress v. Union Realty Co.*, 97 S.W.3d 573, 576 (Tenn.Ct.App.2002); Tenn. R.App. P. 13(d). Upon review, this Court will not re-weigh the evidence, but will take the strongest view possible of the evidence in favor of the prevailing party, and discard evidence to the contrary. *Id.* We will allow all reasonable inferences to uphold the jury's verdict, setting it aside only if there is no material evidence to support it. *Id.* This standard of review safeguards the constitutional right to a trial by jury. *Id.*

In *McClung v. Delta Square*, the Tennessee Supreme Court held that while businesses are not insurers of their customers safety, they have a duty to take reasonable steps to protect their customers from foreseeable criminal attacks by third parties. *McClung v. Delta Square Ltd.*, 937 S.W.2d 891, 902 (Tenn.1996). In so holding, the Court overruled *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn. 1975), which held that businesses had no duty to protect against criminal acts of a third party unless they knew or had reason to know that such acts were occurring or about to occur on the premises, and that conditions in the area were irrelevant in assessing the foreseeability of criminal acts. *Id.* at 899. In *McClung*, the Court opined that foreseeability is the critical inquiry in determining whether a business owes its customers a duty to protect against criminal acts by a third party. *Id.* The Court stated that "[i]t makes little sense to ignore the frequency and nature of criminal activity in the immediate vicinity of the business, such as the adjacent parking lot" in determining foreseeability. *Id.*

▋ The *McClung* Court sought to address both the economic concerns of businesses and the safety concerns of their customers. *Id.* at 902. Thus the Court adopted a balancing approach to determine the duty of care owed to protect against criminal acts. *Id.* The Court held that the duty owed must be determined by balancing the foreseeability and gravity of harm to the customer against the burden imposed on the business to protect against that harm. *Id.* The more foreseeable and grave the danger to the customer, the greater the duty of the business to protect against it. Additionally, as the gravity of harm increases, the degree of foreseeability necessary to impose a duty decrease. *Id.* "The degree of foreseeability needed to establish a duty of reasonable care is, therefore, determined by considering both the magnitude of the burden to defendant in complying with the duty and magnitude of the foreseeable harm." *Id.* In determining the duty owed, the court must consider: 1) the foreseeable probability of the harm or injury occurring; 2) the importance or social value of the activity engaged in by defendant; 3) the usefulness of the conduct to defendant; 4) the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; 5) the relative usefulness of the safer conduct; and 6) the relative safety of alternative conduct. *McClung v. Delta Square Ltd.*, 937 S.W.2d 891, 901 (Tenn. 1996). The Court emphasized that such an approach is "consistent with our prevailing principles of fairness and justice." *Id.*

The *McClung* Court rejected the notion that foreseeability could be established *only* by prior incidents of criminal attacks on the premises. It noted, however, that

[a]s a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred *on or in the immediate vicinity of defendant's premises. Courts must consider the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship*

*to the crime giving rise to the cause of action.* To hold otherwise would impose an undue burden upon merchants.

*Id.* at 902 (emphasis added).

The approach adopted in *McClung* was reaffirmed in *Staples v. CBL & Associates,* where the Court reversed summary judgment in favor of the defendant business. *Staples v. CBL & Assoc.,* 15 S.W.3d at 91. The *Staples* Court held that the criminal attack against plaintiff Staples was foreseeable in light of the numerous incidents of crime on the defendant's premises in the fourteen months prior to the attack. *Id.* Thus the Court held that defendant business owed a duty of reasonable care to protect its customers against criminal attacks. The *Staples* Court "hasten[ed] to add, however, that [it] express[ed] no opinion on whether the defendants breached their duty of reasonable care to Ms. Staples." *Id.* The Court remanded the case for a jury trial. *Id.* at 92.

■ Unlike the court in *McClung* and *Staples,* we are not asked to review whether Wilson World owed a duty of care to Mrs. Khoury. The trial court determined that there was duty and therefore denied summary judgment and allowed the action to proceed to trial. The action was tried by a jury, which determined Wilson World had not breached its duty of reasonable care. In the appeal currently before this Court, we are asked to determine whether the trial court erred in limiting the evidence of crime in the area to that of the Wilson World hotel, its parking lot, and the adjacent property.

■ We have reviewed the balancing approach adopted in *McClung* and reiterated in *Staples* in response to Mrs. Khoury's argument that it was error for the trial court to so limit the scope of evidence of crime in the "vicinity" in light of the Court's holding in *McClung.* We

agree with Mrs. Khoury that evidence of crime in the vicinity is an element which may establish foreseeability, which must be considered by the jury in determining whether the defendant has breached its duty of care. According to the approach adopted in *McClung,* however, the foreseeability of criminal acts must, in the first instance, be considered by the court to determine, as a matter of law, the scope of the duty owed. In making this determination, the court must balance the costs of security measures to the business against the likelihood and gravity of harm to the customer based upon what is foreseeable in light of "the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship giving rise to the cause of action." *McClung v. Delta Square Ltd.,* 937 S.W.2d 891, 902 (Tenn.1996). As noted by Justice Holder in her concurring opinion in *Staples,* this balancing approach adopted in *McClung* somewhat blurs "the line between the trial court's function in determining duty and the jury's function in determining negligence." *Staples v. CBL & Assoc.,* 15 S.W.3d 83, 93 (Tenn.2000) (Holder, J., concurring). As noted, the *Staples* Court specifically did not opine on whether the defendant had breached its duty. As Justice Holder emphasized, "[d]etermining whether a duty exists should not be confused with determining whether a breach of that duty has occurred." *Id.*

*McClung* and *Staples* held that prior crime in the immediate vicinity may be considered to determine foreseeability. However, neither case defined the extent of the vicinity which may be considered immediate. In both cases, the court considered evidence of prior crime on the premises, including the parking lot, to determine that a criminal attack was foreseeable and that a duty to protect may be imposed.

 In the case a bar, the trial court limited the evidence of prior crime to all types of crime occurring on defendant's premises, including its parking lot, and the adjacent property during a period of one-year prior to the October 1992 attack on Mrs. Khoury. It accordingly excluded testimony regarding criminal activity in a wider area. The court also permitted evidence of an armed robbery of a desk clerk at the adjacent Wilson Inn in March of 1991. The trial court specifically did not allow evidence of crime at the Mall of Memphis. Generally, a trial court's ruling on the admissibility of evidence is within the sound discretion of the trial judge. Further, trial courts are accorded a wide degree of latitude in their determination of whether to admit or exclude evidence, even if such evidence would be relevant. A trial court's evidentiary ruling will be overturned on appeal only upon a showing of an abuse of discretion. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn.Ct.App.2001).

Upon review of the record in this case, we cannot say that the trial court erred in limiting the evidence of prior crime in the immediate vicinity to crime occurring in the hotel, on its parking lot, and on the adjacent property during the one-year period prior to the attack on Mrs. Khoury, plus an armed robbery occurring in the adjacent property in March 1991. This evidence included the testimony of plaintiff's expert witness, John Harris (Mr. Harris). Mr. Harris inspected the hotel property, reviewed its incident reports and police incident reports for October 1991– October 1992, and testified that, in his opinion, Wilson World had failed to provide reasonable care to protect Mrs. Khoury from a criminal attack, and that its negligence was the proximate cause of her injuries. Mr. Harris further testified that crime in the defined area during the one-year period included 48 criminal acts, including assault, burglary, motor vehicle thefts, armed robbery, and other incidents. He testified that most of the criminal activity occurred between 8:00 pm and midnight. Mrs. Khoury submits that absent the restriction of evidence by the court, Mr. Harris would have offered competent evidence of a significant amount of criminal activity in the wider area known as the American Way Corridor.

 Although evidence of crime in the "immediate vicinity" is relevant and admissible to determine foreseeability, clearly evidence of crime on the property itself is the best evidence. Neither the *McClung* nor *Staples* Courts defined "immediate vicinity," and we do not seek to limit or define the term here. We believe that determination is best left to the trial court in consideration of the circumstances of each case. In light of the totality of the evidence admitted in this case, we cannot say the trial court abused its discretion in limiting the scope of evidence regarding prior criminal acts.

 Mrs. Khoury also submits that it was error for the trial court to admit the testimony of Fred Del Malva (Mr. Del Malva), defendant's expert witness. She contends that Mr. Del Malva's testimony regarding the standard practices of hotels is contrary to the holding in *McClung* that duty must be established on a case-by-case basis. Questions regarding the admissibility, qualifications, relevancy and competency or an expert's testimony generally are within the discretion of the trial court. *Seffernick v. Saint Thomas Hosp.*, 969 S.W.2d 391, 393 (Tenn.1998). The Tennessee Rules of Evidence provide, however, that the court shall disallow testimony in the form of opinion or inference if the underlying facts or data indicate a lack of trustworthiness. Tenn. R. Ev. 703.

Mr. Del Marva testified that the attack on Mrs. Khoury was a random act of vio-

lence that "in no way could have been deterred or prevented." He further testified regarding the factors considered in his evaluation, including the type of hotel, incidents of prior crime, the nature of that crime, the level of security, the review of that security, and the foreseeability of crime inside a hotel in light of crime in the parking lot. Mrs. Khoury does not challenge the trustworthiness of Mr. Del Marva's testimony regarding industry standards, but contends, essentially, that such standards are not applicable in light of *McClung.* Her argument, as we perceive it, is that *McClung* requires an examination only of the circumstances of the individual property and disallows considerations of standard industry practices. Mrs. Khoury further contends that Mr. Del Marva's testimony was confusing and that its probative value was outweighed by its prejudicial effect.

As discussed, *McClung* and its successor, *Staples,* addressed the issue of whether defendant owed plaintiff a duty, not whether defendant had breached that duty. Neither *McClung* nor *Staples* address the evidence which may be introduced to establish breach. Further, we find Mrs. Khoury's argument that only the circumstances of the property should be considered in establishing breach to be inconsistent with her assertion that duty must be considered in light of the incidents of criminal activity in a much wider area. While not conclusive, evidence of the practices of similarly situated properties is relevant to the determination of the standard of care. We do not believe the trial court erred in admitting Mr. Del Marva's testimony. The weight of that testimony is a matter to be determined by the jury.

### Non-exclusion of Juror

 Mrs. Khoury submits it was error for the trial court not to exclude Lisa Toldi (Ms. Toldi) from the jury for cause because she and members of the Wilson family attend the same church. Mrs. Khoury did not move for Ms. Toldi to be excused, but submits such a motion would have been fruitless as the trial court stated it would refuse to excuse her. Whether a juror should be disqualified because of a personal acquaintance with one of the parties is within the discretion of the trial judge. *Carney v. Coca-Cola Bottling Works of Tullahoma,* 856 S.W.2d 147, 149 (Tenn.Ct.App.1993)(perm.app.denied). Whether friendship or acquaintance with a party will result in disqualification of a juror depends on the facts of each case. *Id.*

Ms. Toldi stated that she attended church and Bible study with someone named "Stephanie" who was married to "a Wilson." When asked by the court whether that would make her less comfortable to hear the case, Ms. Toldi replied, "I don't know. I realized—I mean, I was in the Bible study with her for 10 months. But I just knew her first name. But then, the— Bill T., I believe, died last year, and I just went to the funeral." Ms. Toldi indicated no further association with "Stephanie" or any other Wilson family member. We note that no Wilson family member was a party to or witness in this case. We find no abuse of discretion in the trial court's refusal to disqualify Ms. Toldi from the jury.

### Superseding Cause Instruction

 If a defendant is found negligent in failing to take adequate measures to guard against foreseeable harm, then the next question for the jury is whether that negligence proximately caused the harm. *See McClung v. Delta Square Ltd.,* 937 S.W.2d 891, 905 (Tenn.1996). Although a superseding, intervening cause may break the chain of causation such that a defendant cannot be held to have proximately caused the plaintiff's injury, "[a]n intervening act, which is a normal response created by negligence, is not a su-

perseding, intervening cause so as to relieve the original wrongdoer of liability, provided the intervening act could have reasonably been foreseen and the conduct was a substantial factor in bringing about the harm." *Id.* (quoting *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994)).

Mrs. Khoury submits it was error for the trial court to instruct the jury on superseding causes in light of *McClung.* However, in this case, the jury returned a verdict finding Wilson World not negligent. It was not necessary, therefore, for the jury to address the question of a superseding cause. Accordingly, any error which may have occurred would be harmless. This issue is pretermitted.

### *Conclusion*

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the appellants, Cheryl D. Patterson–Khoury and Naif S. Khoury, and their surety, for which execution may issue if necessary.