IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2009 Session

## JONATHAN PARKER v. HENDERSON COUNTY, TENNESSEE ET AL.

**Direct Appeal from the Circuit Court for Henderson County**
**No. 05199      Donald P. Harris, Senior Judge**

---

**No. W2009-00975-COA-R3-CV - Filed February 4, 2010**

---

The plaintiff/appellee, Jonathan Parker ("Mr. Parker"), was shot once in the right shoulder by Officer David Stanhope ("Ofc. Stanhope") of the Lexington Police Department during the execution of a search warrant at Mr. Parker's residence. The trial court held the City of Lexington ("the City") liable for the injury that Mr. Parker suffered. The court determined that Sergeant Jeff Middleton ("Sgt. Middleton") was negligent in failing to properly supervise Ofc. Stanhope during the operation and that Ofc. Stanhope negligently created the dangerous situation leading to the use of deadly force. The court awarded $40,000 in damages to Mr. Parker, which accounted for his fault in failing to immediately respond to police commands. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J. and J. STEVEN STAFFORD, J., joined.

John D. Burleson and Dale Conder, Jr., Jackson, Tennessee, for the appellant, City of Lexington, Tennessee.

Jeffrey P. Boyd, Jackson, Tennessee, for the appellee, Appellee, Jonathan Parker.

**OPINION**

### I. Background and Procedural History

On November 19, 2004, Investigator Chris James ("Inv. James") of the Henderson County Sheriff's Department learned through reliable informants that a black male known as "Big Man" was in possession of crack cocaine packaged for resale. "Big Man" was said to be in possession of the drugs at a residence in French's Trailer Park in Lexington, Tennessee. Inv. James incorporated this information into an affidavit and obtained a search warrant from Judge Steve Beal of the General

Sessions Court of Henderson County authorizing the search of the residence in question, "Big Man," and any persons or vehicles on the premises. Inv. James had previously contacted Sgt. Middleton of the Lexington Police Department, leader of the local S.W.A.T. team, regarding the anticipated search. Sgt. Middleton agreed to lead the operation and instructed Ofc. Stanhope to conduct surveillance at the residence. Upon the issuance of the warrant, Sgt. Middleton convened the S.W.A.T. team at the Lexington Police Department to prepare for the operation.

Sgt. Middleton determined that a dynamic execution of the warrant, which would have involved forcibly entering the residence by surprise, was unnecessary; rather, the officers would conduct a "classic ruse": (1) the officers would place a fictitious loud-music complaint, (2) Ofc. Stanhope would approach and lure "Big Man" away from the residence, (3) Ofc. Stanhope would detain "Big Man" and radio for backup, and (4) the remaining officers would arrive to help execute the warrant. The purpose of this plan was to protect the officers and any unknown persons occupying the residence.[1] Although Sgt. Middleton did not articulate a plan "B," he testified that the officers were trained to proceed with a contingency plan of containment and call out. If the ruse failed, the officers would immediately take action to contain the suspect and then call him out of the residence – e.g.: "Come out with your hands up!" Only if attempts at call out and negotiation failed would the officers proceed to force the suspect out.

At or around 10:25 p.m. on November 18, 2004, Ofc. Stanhope parked his vehicle approximately seventy-five feet from the targeted residence and initiated his approach. When Ofc. Stanhope arrived, Mr. Parker was sitting on the steps of the residence, talking on a cellular phone, and drinking a beer. As Ofc. Stanhope exited his marked police vehicle, Mr. Parker arose, entered his residence, and closed the door behind him. This spurred Ofc. Stanhope to sprint towards the front door of the residence with his weapon holstered. He knocked, announced "police search warrant," and tried the door handle with no success. At this time, he heard Mr. Parker moving towards the rear of the residence and radioed for backup.

Ofc. Stanhope immediately started toward the rear of the residence, which was very dark, and drew his weapon. After Ofc. Stanhope turned the northeast corner of the residence, Mr. Parker appeared in the back door of the residence holding an item in each of his hands. As Mr. Parker leaned out to shut his back door, Ofc. Stanhope ordered him to show his hands and to "drop it, drop it, drop it." Ofc. Stanhope fired three shots toward Mr. Parker within a "split second," striking him once in the right shoulder. Mr. Parker dropped the items in his hands, a cellular phone and beer bottle, and retreated to the safety of his home. He exited the front door and was restrained by the other officers, immediately asking why an officer had shot him. A search conducted of the residence with his consent revealed no illegal drugs. A twenty-two caliber rifle, however, was found in a

---

[1]Sgt. Middleton testified that he would have used a different plan if Inv. James had communicated the fact that "Big Man" was seen with a weapon on his person just one day prior. The trial court determined that Inv. James was negligent in not relaying this information; however, the court found that Inv. James' negligence was not a proximate cause of Mr. Parker's injury. Neither party challenged this ruling on appeal.

bedroom closet.

Mr. Parker was not arrested on any charges arising out of the incident. Instead, officers transported him to the Henderson County Community Hospital where he received treatment for a bullet wound. Fortunately, Mr. Parker recovered from his injury and obtained a job at Fencemaster in Jackson, Tennessee within a year. He worked there for two years before attending classes at the Tennessee Technology Center in pursuit of a degree in tool and die making. At the time of trial, Mr. Parker had successfully parlayed a temporary job with United General Nations, a company that builds automotive parts, into a permanent position. Nevertheless, a bullet remains in Mr. Parker's shoulder, which causes him pain and discomfort.

Mr. Parker filed suit in state and federal court following the incident. *See Parker v. Henderson County, Tennessee*, 450 F. Supp. 2d 842 (W.D. Tenn. 2006).[2] Mr. Parker's complaint in state court sought compensatory and punitive damages against multiple defendants on claims of gross negligence, negligence, assault, battery, and false arrest. On January 13, 2009, the trial court entered an order that granted summary judgment to all defendants on all claims with the exception of the claims in negligence against the City and Henderson County and claims in intentional tort against Ofc. Stanhope in his individual capacity. At the conclusion of a bench trial, the court dismissed the claims against Henderson County and Ofc. Stanhope but held the City liable for the negligence of its officers.

The trial court's memorandum and order found, in pertinent part:

2. Sergeant Jeff Middleton was negligent in failing to properly supervise Ofcr. David Stanhope. Sgt. Middleton knew that if the ruse was not successful, Ofcr. Stanhope would proceed alone in the containment of the suspect. Ofcr. Stanhope, in effect, was sent in alone to execute a search warrant where the suspect may have reason to believe he was the target of policy activity. Without backup, the danger of someone being injured in such a situation is greatly increased. The injury in this case occurred while Ofcr. Stanhope was operating alone. The court finds the failure to supervise to be an operational activity for which the City of Lexington is liable under the Governmental Tort Liability Act. The court finds Sgt. Middleton's negligence

---

[2]Mr. Parker's federal court complaint alleged violation of 42 U.S.C. § 1983, violation of the Tennessee Constitution, negligence, gross negligence, assault, battery, and false arrest. *Parker*, 450 F. Supp. 2d at 846. The United States District Court for the Western District of Tennessee granted summary judgment on the majority of Mr. Parker's federal claims. *Id.* at 857. The federal court declined to exercise supplemental jurisdiction over Mr. Parker's Tennessee Governmental Tort Liability Act claims and his claims of assault, battery, and false arrest. *Id.* The court did exercise jurisdiction over the alleged violation of the Tennessee Constitution and granted summary judgment in favor of the defendants. *Id.* at 856. The court found that summary judgment was not appropriate as to the excessive force claim alleged against Ofc. Stanhope, *id.* at 854, but the parties indicated at oral arguments that Mr. Parker voluntarily non-suited this claim.

to be a proximate cause of the injury to Mr. Parker and finds the degree of his fault to be 40% of the total fault.

3. Ofcr. David Stanhope of the Lexington Police Department was negligent in placing himself in harm's way prior to the arrival of the other officers. His doing so significantly increased the danger of someone being injured, and he could have observed the rear of the trailer from cover. The court finds Ofcr. Stanhope was engaged in an operational activity for which the City of Lexington is liable under the Governmental Tort Liability Act. The court finds the negligence of Ofcr. Stanhope to be a proximate cause of the injury to Mr. Parker and places the degree of his fault at 40% of the total fault.

4. Jonathan Parker was negligent by failing to drop the items in his hands when Ofcr. Stanhope yelled a warning. The degree of his fault is reduced because he was holding rather innocuous items and would naturally be slow to comprehend the officer wanted him to drop them. The court finds the negligence of Mr. Parker to be a proximate cause of his injury and places the degree of his fault at 20%.

. . . .

5. Mr. Parker's damages proximately caused by the fault of the parties are $50,000.00. [3]

The City timely filed a notice of appeal.

## II. Issues Presented

The City raises the following three issues, as we perceive them, for review:

(1)     Whether the City is immune from liability for its officers' negligent acts pursuant to the "civil rights" exception in Tennessee Code Annotated section 29-20-205(2);

(2)     Whether the evidence preponderates against the trial court's determination that Sgt. Middleton, in effect, sent Ofc. Stanhope in alone to detain "Big Man" and execute the warrant;

(3)     Whether the court erred in finding that Ofc. Stanhope's actions were not reasonable under the circumstances.

---

[3]The court's memorandum contained two findings numbered "5" with the first concerning whether the officers negligently failed to stop a green Cadillac that may have left the residence shortly before the execution of the search warrant. The parties have not addressed this finding on appeal.

Mr. Parker does not challenge any aspect of the trial court's ruling. Our review, therefore, is limited to the issues that the City raises and addresses in its brief.

### III. Standard of Review

This Court reviews the judgment of a trial court in a bench trial *de novo* upon the record, according a presumption of correctness to the factual findings of the court below. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citation omitted). We will not disturb a trial court's findings of fact unless a preponderance of the evidence is to the contrary. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000) (citation omitted). Factual determinations based on a trial judge's assessment of witness credibility receive a higher degree of deference; we will depart from the trial court's determination only if clear and convincing evidence shows the finding to be in error. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted). Our review is *de novo* with no presumption of correctness if the trial court does not produce findings of fact. *Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. Ct. App. 1995) (citations omitted). Questions of law are similarly reviewed *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citation omitted).

### IV. Analysis

#### A. Final Judgment

As an initial matter, we must consider whether this Court has subject matter jurisdiction over the present appeal. "Subject matter jurisdiction concerns the authority of a particular court to hear a particular controversy." *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996) (citing *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994)). The subject matter jurisdiction of this Court is limited to final judgments except where otherwise provided by statute or procedural rules. [4] *City of Jackson v. Hersh*, No. W2008-02360-COA-R3-CV, 2009 WL 2601380, at *3 (Tenn. Ct. App. Aug. 25, 2009) (*no perm. app. filed*) (citing *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990)). Generally, in order for this Court to have jurisdiction, the trial court's judgment must adjudicate all of the claims, rights, and liabilities of the parties, leaving the court "with nothing to adjudicate." *Ball v. McDowell*, 288 S.W.3d 833, 836-37 (Tenn. 2009) (citing *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003)).

There is some question as to whether the trial court's order is a final judgment in this case

---

[4]Rule 54.02 of the Tennessee Rules of Civil Procedure, for example, permits courts to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Tenn. R. Civ. P. 54.02. Additionally, Rules 9 and 10 of the Tennessee Rules of Appellate Procedure provide for discretionary appeals that do not require a final judgment. *See* Tenn. R. App. P. 9(a); Tenn. R. App. P. 10(a).

pursuant to Rule 3(a) of the Tennessee Rules of Appellate Procedure. Rule 3(a) provides that "any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties." Tenn. R. App. P. 3(a). The final order in this case does not expressly address Mr. Parker's claim for punitive damages. Punitive damages, however, are not recoverable on claims of ordinary negligence under the Tennessee Governmental Tort Liability Act ("TGTLA") – the only basis for recovery at trial.[5] *See Tipton County Bd. of Educ. v. Dennis*, 561 S.W.2d 148, 152 (Tenn. 1978). We therefore conclude that the court's order implicitly denied Mr. Parker's claim for punitive damages, which were not recoverable as a matter of law. Because the court's order adjudicates all of the claims, rights, and liabilities of the parties, we will proceed to address the merits of this appeal.

### B. Immunity

The City first argues that it cannot be held liable for the negligence of its officers because Mr. Parker's injury arose during a violation of his civil rights. The TGTLA provides, in pertinent part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> . . . .
>
> (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or *civil rights*[.]

Tenn. Code Ann. § 29-20-205(2) (2000) (emphasis added). It is the City's position that the term "civil rights" includes violations of federal civil rights laws and the federal constitution. *See, e.g.*, *Huff v. City of Camden, Tenn.*, No. 07-2644, 2009 WL 276770, at *11 (W.D. Tenn. Jan. 30, 2009) (citation omitted); *Woodby v. Bradley County, Tenn.*, No. 1:07-cv-3, 2008 WL 5245361, at *12 (E.D. Tenn. Dec. 16, 2008). The City maintains that it is immune from liability in this case because Mr. Parker's claims, in essence, derive from a violation of his federal civil rights. *See Hale v. Randolph*, No. 1:02-CV-334, 2004 WL 1854179, at *17 (E.D. Tenn. Jan. 30, 2004). Mr. Parker, however, has neither pleaded nor argued in the present proceeding that the City or its officers violated his federal civil rights. Nor has the City shown that Mr. Parker established a violation of his civil rights in federal court. Thus, there is no basis for this Court to conclude that Mr. Parker's injury arose out of a violation of his federal civil rights. The City may be held liable for the negligent acts or omissions of its officers that proximately caused Mr. Parker's injury.

---

[5]Mr. Parker did not challenge the dismissal of the intentional tort claims brought against Ofc. Stanhope in his individual capacity.

*C. Negligence*

The City next argues that neither Sgt. Middleton nor Ofc. Stanhope were negligent. As a general matter, the elements of negligence in Tennessee are: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008) (citing *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 771 (Tenn. 2006); *Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005)). The City does not challenge whether the officers owed a duty of care to Mr. Parker, whether Mr. Parker suffered an injury, whether the officers' actions were proximate or legal causes of Mr. Parker's injury, or whether the officers' actions were causes in fact of Mr. Parker's injury. Our review, therefore, will focus solely on the arguments presented in the parties' briefs, which pertain exclusively to factual questions presented to and decided by the trial court.

### i. Negligence of Sgt. Middleton

The City challenges the finding of negligence on behalf of Sgt. Middleton on a single front; it argues that the trial court erroneously concluded that Sgt. Middleton, in effect, sent Ofc. Stanhope in alone to execute the warrant. The City argues that four other officers were waiting nearby to execute the search warrant or to provide backup for Ofc. Stanhope. These officers were available and prepared to respond once Ofc. Stanhope alerted them to his need for assistance. The City argues that these officers arrived to help Ofc. Stanhope execute the contingency plan of containment and call out as he was moving to the east side of the residence. According to the City, "[n]ot only was David Stanhope not acting alone, but he knew the other officers were coming to his assistance." There was evidence to this effect; however, we do not find the evidence to preponderate against the trial court's determination.

It is unquestioned that backup was available to Ofc. Stanhope and did arrive to help execute the warrant in the present case. The focus of the court's factual finding, however, was on the initial period of time in which Sgt. Middleton left Ofc. Stanhope alone to contain the suspect. It is undisputed that Sgt. Middleton's plan called for Ofc. Stanhope alone to approach and detain the suspect. Sgt. Middleton testified that, should the initial plan break down, Ofc. Stanhope would proceed individually under the contingency plan of containment and call out until backup arrived. Sgt. Middleton further testified that Ofc. Stanhope's backup was stationed 100 to 150 yards away. Thus, it was apparent that Ofc. Stanhope would be left alone to contain the suspect for some period of time if the ruse failed. It was during this period of time that the danger to both the officer and the suspect was heightened and during this period of time that the injury occurred. Backup did not arrive until after Ofc. Stanhope had discharged his weapon three times, wounding Mr. Parker. We hold that the evidence does not preponderate against the trial court's factual finding.

Even if we characterized the facts differently – holding, for example, that Sgt. Middleton understood Ofc. Stanhope would proceed in the containment of the suspect without backup for a

short period of time – it is not apparent that the trial court would have reached a different conclusion on the reasonableness of Sgt. Middleton's supervision. The City has not explained, or attempted to explain, how a different factual finding would militate against the court's finding of negligence. As we will explain below, the trial court's determination of whether Sgt. Middleton acted reasonably under the circumstances is a factual determination. The City, at a minimum, must show that the trial court's finding of breach of duty is contrary to a preponderance of the evidence. Not only has the City not pointed to evidence demonstrating the reasonableness of Sgt. Stanhope's conduct, the City has not addressed this point at all. The trial court's determination that Sgt. Middleton negligently failed to supervise Ofc. Stanhope is affirmed.

### ii. Negligence of Ofc. Stanhope

The negligence of Ofc. Stanhope in this case is not predicated, as one might initially assume, on a negligent, unlawful, or excessive use of force; rather, the trial court found that Ofc. Stanhope negligently created the circumstances leading to his use of deadly force. The City challenges the court's decision on two fronts: (1) the City argues that the court erred when it found that Ofc. Stanhope "plac[ed] himself in harm's way prior to the arrival of the other officers" and (2) the City argues that Ofc. Stanhope's actions were reasonable under the circumstances. Both issues involve questions of fact. *See Patterson-Khoury v. Wilson World Hotel-Cherry Road, Inc.*, 139 S.W.3d 281, 285 (Tenn. Ct. App. 2003) (stating that the question of whether a defendant breached his duty by failing to exercise reasonable care is an issue of fact); *Rains v. Bend of the River*, 124 S.W.3d 580, 588 (Tenn. Ct. App. 2003) (citation omitted) (same).

We first address whether the trial court erroneously found that Ofc. Stanhope placed himself in harm's way prior to the arrival of the other officers. The City argues that the record shows that the backup officers were very close when Ofc. Stanhope approached the residence. Sgt. Middleton testified that as he exited his vehicle he could hear Ofc. Stanhope yelling "Police, show me your hands, show me your hands," and then "[d]rop it, drop it." The second "drop it" was "almost immediately followed by three shots." As the command to "drop it" was issued, Sgt. Middleton was approaching the northwest corner of the residence. But it was not until after shots were fired that Sgt. Middleton rounded the northwest corner. Thus, it is indisputable that Sgt. Middleton, the first officer to arrive on the scene, was not in a position to aid his fellow officer until after Ofc. Stanhope had confronted and wounded Mr. Parker. We hold that the evidence does not preponderate against the trial court's conclusion that Ofc. Stanhope placed himself in harm's way before backup arrived. The court's finding is affirmed.

We next consider whether Ofc. Stanhope breached the applicable standard of conduct by failing to act reasonably under the circumstances.[6] After a duty of care is established, the question

---

[6]The City does not address the existence or scope of the duty owed to Mr. Parker in its brief; its arguments primarily concern the reasonableness of Ofc. Stanhope's conduct. The trial court did not expressly articulate the standard of care it applied in finding the City negligent, but it appears that the court applied a standard of reasonable care under the circumstances, which the

(continued...)

of whether the defendant breached that duty is a question of fact. *Leatherwood v. Wadley*, 121 S.W.3d 682, 694 (Tenn. Ct. App. 2003). The trial court resolved this question of fact – whether Ofc. Stanhope breached the applicable standard of conduct – in favor of Mr. Parker. The Court relied heavily on the testimony of Geoffrey Alpert ("Mr. Alpert"), Mr. Parker's expert witness, who pointedly testified that Ofc. Stanhope should have taken cover on the northeast corner of Mr. Parker's residence. His testimony was in direct contravention of the City's expert who testified that Ofc. Stanhope's decision to move out from cover was reasonable. It was also in direct contravention of Ofc. Stanhope's testimony that stopping at the northeast corner was not an option. It follows that the court resolved the dispute over the reasonableness of Ofc. Stanhope's actions in favor of Mr. Parker based on the testimony of his expert witness. The resolution of this issue in favor of the plaintiff's expert, Mr. Alpert, relies on an implicit finding of credibility in his testimony; counsel for the City conceded this point at oral arguments.

As a result, the court's resolution of this factual dispute is entitled to substantial deference. "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 739,783 (Tenn. 1999). This rule applies regardless of whether the finding of credibility is express or implied. *See Herbison v. Herbison*, No. M2008-00658-COA-R3-CV, 2009 WL 1634914, at *6 (Tenn. Ct. App. June 10, 2009) (*no perm. app. filed*) (citation omitted). Further, "[t]he weight of the theories and the resolution of legitimate but competing expert opinions are matters entrusted to the trier of fact." *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 275 (Tenn. 2005) (citing *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 265 (Tenn. 1997)). This Court has explained that the resolution of conflicting expert testimony "falls 'within the province of the trier of fact . . . and where an expert witness's testimony is supported by the evidence and the trier of fact credits that testimony over others, there is no basis to reverse the court's findings.'" *Estate of Fetterman v. King*, 206 S.W.3d 436, 445 (Tenn. Ct. App. 2006) (quoting *Atkins v. State*, No. E2003-01255-COA-R3-CV, 2004 WL 787166, at *5 (Tenn. Ct. App. Apr. 14, 2004)).

We find insufficient basis to reverse the trial court's conclusion that Ofc. Stanhope did not act reasonably under the circumstances. The City makes much of its assertion that the trial court incorrectly judged Ofc. Stanhope's actions with 20/20 hindsight; however, as counsel for Mr. Parker pointed out at oral arguments, every determination of whether a defendant has breached a duty of care involves the use of hindsight. We agree that police officers often face tense and uncertain situations; courts should examine the reasonableness of their actions with this consideration in mind. But the City has simply failed to provide this Court with sufficient evidence to overturn the trial court's findings.

The City's most persuasive point addresses whether the trial court failed to account for the fact that Ofc. Stanhope might have created a cross-fire situation between himself and Sgt. Middleton

---

(...continued)

City agreed was the proper standard at oral arguments. For the purposes of this appeal, we will assume that the trial court found the Ofc. Stanhope did not act reasonably under the circumstances.

if he had chosen to observe the rear of the residence from cover. The City submits that, even if the officers had designated a shooter, observing the rear of the residence from cover on opposite sides of the residence would have placed the non-shooting officer directly in the line of fire. The City, however, fails to recognize that there is no potential for cross-fire whatsoever until backup arrives. There is no indication that it would have not been reasonable for Ofc. Stanhope to move from cover to minimize potential cross-fire once backup arrived. In light of the deference accorded to the trial court's finding, we hold that Ofc. Stanhope breached the applicable standard of care in this case. Because no other argument is raised, we affirm the trial court's finding of negligence.

## V. Conclusion

For the foregoing reasons, we affirm the judgment in favor of Mr. Parker. Costs of this appeal are taxed to the appellant, the City of Lexington, and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE