# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### June 23, 2011 Session

## TREVOR MOORE, ET AL. v. HOUSTON COUNTY BOARD OF EDUCATION, ET AL.

**Appeal from the Circuit Court for Houston County**
**No. 1397     Robert E. Burch, Judge**

---

**No. M2010-02166-COA-R3-CV - Filed August 23, 2011**

---

This matter arises from an assault of a student which occurred at Houston County Middle School. The parents of the victim sued the Houston County Board of Education, two HCMS students who participated in the assault, and the mothers of the students involved in the attack. Following a bench trial, the court granted Plaintiffs a judgment for $50,578.97. The court determined that the school board was 25 percent at fault; the court also found that the school board was immune pursuant to the discretionary function exception of the Tennessee Governmental Tort Liability Act and dismissed the case against the board. The court then granted plaintiffs judgment against the non-governmental defendants jointly and severally for 75 percent of the monetary award. We affirm the trial court's holding that the Board was negligent, reverse the trial court's ruling that the school board was immune, and modify the judgment to hold the defendants jointly and severally liable for the entire amount of damages awarded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part and Affirmed in Part**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Sheri S. Phillips, Clarksville, Tennessee, for the appellants, Trevor Scott Moore, Ronald Scott Moore, Heather Lynn Moore.

John David Schwalb, Franklin, Tennessee, and Clifford Knott McGown, Jr., Waverly, Tennessee, for the appellees, Houston County Board of Education, Tyler Perry and Melissa Perry.

Bradley Owle, appellee, Pro Se.

Renee Dennis, appellee, Pro Se.

**OPINION**

## I. Factual and Procedural History

Scott and Heather Moore ("Plaintiffs"), individually and on behalf of their son, Trevor Moore ("Trevor"), filed suit against the Houston County Board of Education ("the Board"), Tyler Perry ("Tyler") and his mother Melissa Perry, and Bradley Owle ("Bradley") and his mother Renee Dennis (collectively referred to as "Defendants"); they sought to recover damages arising from an assault on Trevor, a student at Houston County Middle School ("HCMS"). The plaintiffs alleged that the negligent and intentional acts of the Defendants "were the sole and proximate cause and legal cause of the injuries to the Plaintiffs." Tyler and his mother filed an answer, essentially denying Plaintiffs allegations. Bradley and Renee Dennis did not appear or file an answer. The Board answered the complaint and asserted several affirmative defenses. The case proceeded to a non-jury trial on June 28, 2010.

Trevor testified that, beginning in the spring of 2006, Tyler, one of his classmates, began threatening and harassing him; the harassment continued on several occasions throughout the 2006–2007 school year and caused Trevor to fear for his safety at HCMS. The harassment occurred while the two boys were at school, sports functions, while riding the HCMS school bus, and at a school dance. Specific instances of bullying included Tyler "lowering his shoulder" to bump into Trevor in the hallways, tripping Trevor during class, calling Trevor names, and threatening to "beat him up," or to have others beat him up. Trevor further testified that, during the 2006–2007 school year he expressed his fear of Tyler and discussed Tyler's threats and harassment with his parents[1] and other school administrators; specifically, he spoke with Susan Hendry, the HCMS assistant principal, Cathy Harvey, the Director of Schools for the 2006–2007 school year, and Sylvia Vinson, the principal of HCMS, about Tyler's bullying. Trevor's father also discussed his concerns directly with Trevor's teachers, and he spoke with Ms. Vinson and Ms. Harvey regarding Tyler's bullying of his son.

Following an incident between Tyler and Trevor on the school bus in the spring of 2006, Susan Hendry addressed the situation between the boys. The incident report prepared by Ms. Hendry, dated April 4, 2006 summarized her actions as follows, in pertinent part:

---

[1] Trevor's father was employed by HCMS when the incident occurred, however, he was not involved in disciplinary matters involving the bullying of his son.

I called both boys into the office and talked about their behavior. I explained that the boys did not have to like each other, however they had to get along here at school and on the baseball team. I talked to both parents and told them that I would do what I could to keep the boys separated at school. . . .

Despite her efforts, however, the bullying continued throughout the ensuing school year.

On January 30, 2007, while school was in session, Trevor was attacked and severely beaten by Bradley, who had been paid $5.00 by Tyler to carry out the attack. As a result of this attack, Trevor suffered a broken nose and jaw which required surgery and his mouth to be wired shut. Trevor testified that he has trouble breathing and severe headaches as residual effects of the attack.

At the conclusion of trial, the trial court announced its ruling and subsequently entered an order: granting a default judgment against Renee Dennis and Bradley, dismissing Melissa Perry as a party, and granting Plaintiffs a judgment totaling $50,578.97, comprised of $15,578.97 for medical expenses incurred and $35,000 for pain and suffering and loss of enjoyment of life. The trial court apportioned fault between the Defendants, holding:

> [t]he Houston County Board of Education is negligent and assigned 25% fault, however, the Houston County Board of Education is dismissed with Prejudice, the Court being of the Opinion that any fault on the part of the board involves the exercise of a discretionary function for which there has been no waiver of sovereign immunity under the Tennessee Governmental Tort Liability Act.
>
> That a judgment shall be granted in favor of the Plaintiffs for 75% of the total judgement against Tyler Perry, Bradley Owle and Rene Dennis jointly and severally under the principles of agency and vicarious liability for which execution may issue.

Plaintiffs filed a timely appeal and raise the following issues for our review:

I.    Whether the trial court erred in finding that the acts or omissions by the Defendant constituted a discretionary function under the Tennessee Governmental Tort Liability Act.

II.   Whether the trial court erred in dismissing the Houston County Board of Education after making a finding that the acts complained of were foreseeable and that the Houston County Board of Education was negligent.

III. Whether the trial court erred by inappropriately applying comparative fault rather than joint and several liability.

The Board raises the following issue:

I. Whether the trial court erred in finding the attack foreseeable and in assigning fault to the Board.

## II. Standard of Review

In a civil case heard without a jury, we review the trial court's findings of fact *de novo* upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Questions of law are subject to *de novo* review with no presumption of correctness. *Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010). The construction of a statute and its application to the facts are questions of law which we review *de novo* without a presumption of correctness. *Gautreaux v. Internal Med. Educ. Found., Inc.*, 336 S.W.3d 526, 531 (Tenn. 2011).

## III. Discussion

### A. Immunity under the Tennessee Governmental Tort Liability Act

The first issue we address is whether the Board is immune from suit pursuant to the discretionary function exception in the Tennessee Governmental Tort Liability Act ("TGTLA"). Tenn. Code Ann. § 29-20-201 codifies the common law rule that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities." Exceptions to the immunity are set forth at Tenn. Code Ann. §§ 29-20-202–205. The statute at issue in this case, Tenn. Code Ann. § 29-20-205(1), provides as follows:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused; . . .

The TGTLA does not define the term "discretionary function." *See Lucas v. State*, 141 S.W.3d 121, 128 (Tenn. Ct. App. 2004). However, our Supreme Court, in *Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn. 1992), adopted the planning-operational test to assist

courts in analyzing whether the negligent act or omission of a governmental entity is a discretionary function. *Bowers*, 826 S.W.2d at 430–31. Under the planning-operational test, courts are to distinguish governmental acts that are performed at the "planning" level from those performed at the "operational" level:

> decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity.

*Bowers*, 826 S.W.2d at 430.

Plaintiffs contend that the Board's failure to follow disciplinary procedure and policies was an operational decision, not a discretionary function, and, consequently, the trial court erred in finding the Board immune from suit. The Board argues that the trial court appropriately determined that the school's disciplinary decisions were a discretionary function.

Our Supreme Court applied the planning-operational test in *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73 (Tenn. 2001), to determine whether a nursing home's failure to follow employee disciplinary guidelines was a discretionary function for which immunity was available under the TGTLA. In *Limbaugh*, a nursing assistant employed by a state nursing home, physically assaulted and seriously injured Mrs. Limbaugh, a ninety-year-old resident at the facility. Prior to assaulting Mrs. Limbaugh, the employee had demonstrated a propensity for violence toward patients. The administrator of the nursing home testified that the home had standards for disciplining an employee who had exhibited combative behavior; the Court found that the standards were not followed in the case of the employee who assaulted Ms. Limbaugh. In analyzing whether the nursing home's failure to implement its disciplinary policy was a discretionary function, the Court discussed the planning-operational test and noted:

> Decisions that rise to the level of planning or policy-making are considered to be discretionary acts requiring judicial restraint and are, therefore, not subject to tort liability. On the other hand, decisions that merely implement pre-existing policies and regulations are considered to be operational in nature and require the decision-maker to act reasonably in implementing the established policy. If the policy, regulation, or other standard of procedure mandates specific conduct, then any employee reasonably complying with that direction will not abrogate the entity's immunity if the action furthers the underlying policies of the regulation.

*Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 85 (Tenn. 2001) (citing *Chase v. City of Memphis*, 971 S.W.2d 380, 384 (Tenn. 1998)). The Court ultimately reasoned that because the nursing home "negligently failed to follow the guidelines designed to prescribe the proper disciplinary measures to impose," the discretionary function did not bar recovery. *Id.* at 85–86; *see also Haney v. Bradley County Bd. of Educ.*, 160 S.W.3d 886, 900 (Tenn. Ct. App. 2004) (finding that the failure to implement an early-dismissal policy adopted by the board of education was an operational decision not a discretionary decision). With these principles in mind, we must determine whether the HCMS administrators implemented existing policies and regulations or whether their decisions rose to the level of planning or policy-making.

The policies and procedures at issue in this case arise from state law. Tenn. Code Ann. § 49-6-1016, in effect at the time of this incident, required each school district to adopt a policy prohibiting harassment, intimidation, or bullying.[2] In compliance with the requirements of the statute, the Board enacted certain policies and procedures contained in the Houston County Schools Student Handbook. The "Bully/Intimidation" policy in the 2006–2007 version of the handbook states:

> Students shall be provided a safe learning environment. It shall be a violation of this policy for any student to bully, intimidate or create a hostile educational environment for another student. Bullying and intimidations are defined as either physically harming a student or damaging his/her property, or knowingly placing the student in reasonable fear of such, or creating a hostile educational environment. The policy addresses conduct taking place on school grounds, at any school-sponsored activity, on school-provided transportation, or at any official school bus stop immediately before boarding and immediately following deboarding. [footnote omitted]
>
> Alleged victims of the above-referenced offenses shall report these incidents immediately to a teacher, counselor or building administrator. [footnote omitted] Any allegations shall be fully investigated by a complaint manager (as set forth in *Student Concerns, Complains and Grievances* 6.305).

In a separate section, the Student Handbook outlines a "Discipline Policy" which provides, in pertinent part, as follows:

---

[2] Although not at issue in this case, we note that our Legislature has recently added "cyber-bullying" to the list of prohibited conduct in Tenn. Code Ann. § 49-6-1016. H.B. 301, 107 Gen. Assem. (Tenn. 2011).

When it has been determined by the principal that a student has been guilty of a violation of the provisions of this policy, the principal shall impose appropriate disciplinary measures. It is the intention of the Board of Education that this policy be viewed as cumulative so that repeat or persistent violations of the policy should result in enhanced punishment. A discipline record will be maintained on each student. Disciplinary offenses have been assigned various point ratings in this policy. Whenever a child is found guilty of a violation of this policy, the principal will, in addition to issuing appropriate discipline, assign points for the offense. A principal may recommend for expulsion any student who has accumulated over one hundred forty-nine (149) disciplinary points at any time within the school year.

The Student Handbook goes on to list "threats" and "bullying/harassment" as a "Category III" offense. "Threats" are defined as "[t]hreatening or implying physical violence against any other student." The "Disciplinary Action" for a "Category III Offense" is listed as follows:

1st Offense: (10 points) At discretion of the principal, not to exceed ten (10) days suspension.

2nd Offense: (15 points) Suspension, alternative school.

3rd Offense: (20 points) Suspension, alternative school, expulsion.

4th Offense: (30 points) Expulsion.

The policies in the Student Handbook prohibited bullying and harassment, set forth the procedure to be followed when a student or parent complains of a violation of the harassment policy,[3] and described the punishment for students who violate the policies. The

---

[3] The procedure for filing a grievance or complaint for an alleged incident of bullying and the procedure for the school's investigation of the complaint are set forth in the Student Handbook as follows:

*Filing a Complaint* - Any student of this school district who wishes to file a discrimination/harassment grievance against another student or employee of the district may file a written or oral (recorded, if possible) complaint with a complaint manager. Students may also report an allegation of discrimination/harassment to any teacher or other adult employed in the school who shall inform a complaint manager of the allegation. The

(continued...)

role of the HCMS administrators was to implement the polices established by the Board. Like the administrators at the nursing home in *Limbaugh*, the administrators at HCMS were charged with implementing existing policy and were not engaged in policy-making. Thus, the HCMS administrators' decisions were operational in nature, not discretionary, and immunity was removed. *See Limbaugh*, 59 S.W.3d at 85.

## B.    Foreseeability

The trial court stated the following regarding the foreseeability of the attack:

> With regard to the Defendant Houston County Board of Education, the Court finds that they were given notice of the possibility of trouble and possible injury to the plaintiff, Trevor Moore. This injury was reasonably foreseeable. . . .

---

[3](...continued)
complaint should include the following information:

> Identity of the alleged victim and person accused;
> Location, date, time and circumstances surrounding the alleged incident;
> Description of what happened;
> Identity of witnesses; and
> Any other evidence available.

*Investigation* - Within twenty-four hours of receiving the student's complaint, the complaint manager shall notify the complaining student's parent/guardian or legal custodian and the principal who shall inform the director of schools. The parent/guardian or legal custodian shall be given notice of the right to attend an interview of the student in a non-intimidating environment in order to elicit full disclosure of the student's allegations. This interview shall take place with [sic] five (5) days from the time the complaint was first made. If no parent/guardian or legal custodian attends the interview, another adult, mutually agreed upon by the student and the complaint manager, shall attend and may serve as the student's advocate. After a complete investigation, if the allegations are substantiated, immediate and appropriate corrective or disciplinary action shall be initiated. The complaint and identity of the complainant will not be disclosed except (1) as required by law or this policy; or (2) as necessary to fully investigate the complaint; or (3) as authorized by the complainant. A school representative will meet with and advise the complainant regarding the findings, and whether corrective measures and/or disciplinary action were taken. The investigation and response to the complainant will be completed within thirty (30) school days. Copies of the report will be sent to the student, principal, Federal Rights Coordinator and the director of schools. One copy shall be kept in the complaint manager's file of one (1) year beyond the student's eighteenth (18th) birthday. The director of schools shall keep the Board informed of all complaints.

The Court is not at all impressed with the fact that a defendant other than Tyler Perry actually inflicted the injury. The Court finds that Bradley Owle was the agent of Tyler Perry and that what one did the other did; they are vicariously liable. Whether Tyler Perry did the action himself or solicited another to do the action is of academic interest. They are liable for that.

It isn't necessary to predict the exact mechanism of the injury or even its extent if the general mechanism of injury is reasonably foreseeable. So the Houston County Board of Education is negligent.

The Board contends that the trial court erred in finding the Board negligent because it was unforeseeable that Bradley would carry out the attack against Trevor.

In order for a plaintiff to prevail on a claim of negligence, the following elements must be established: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). Foreseeability is one element of a three-pronged test of proximate causation:

1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991) (citations omitted). If the injury giving rise to the plaintiff's cause of action was not reasonably foreseeable, then there is no proximate cause and no liability for negligence. *Ray Carter, Inc. v. Edwards*, 436 S.W.2d 864, 867 (1969). Foreseeability is a question of fact, thus the trial court's findings regarding foreseeability are entitled to a presumption of correctness. *Kindred v. Board of Educ. of Memphis City Schools*, 946 S.W.2d 47, 49 (Tenn. Ct. App. 1997) (citing *Cox v. State*, 844 S.W.2d 173, 178; Tenn. R. App. P. 13(d)); *see also McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 900 (Tenn. 1996).

When discussing foreseeability in the context of our state's educational systems, this Court has previously explained:

Tennessee does not impose upon teachers and school systems the duty to anticipate or foresee the hundreds of unexpected student acts that occur daily in our public schools. *Roberts*, 692 S.W.2d at 872 (citation omitted); however,

we have no hesitation in holding a teacher or local school system to the duty of safeguarding students from reasonably foreseeable dangerous conditions including the dangerous acts of fellow students.

*Mason ex rel. Mason v. Metro. Gov't of Nashville and Davidson County*, 189 S.W.3d 217, 224 (Tenn. Ct. App. 2005). Moreover, "the foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred." *Id.* at 222 (citing *McClenahan,* 806 S.W.2d at 775).

Based on our review of the record, we agree with the trial court that Bradley's attack on Trevor was foreseeable; the fact that Tyler solicited Bradley to carry out his threat does not make the assault unforeseeable. HCMS administrators were on notice that Tyler intended to harm Trevor. The evidence shows that Trevor and his father complained to HCMS administrators throughout the 2006–2007 school year regarding the bullying and harassing behavior Tyler exhibited toward Trevor. Also, Tyler threatened Trevor numerous times, stating that he would beat him up or that he would have his brother or other friends beat him up.[4] Bradley's attack on Trevor was consistent with Tyler's threats. Finally, the HCMS administrators did not follow the policy regarding bullying and harassment which is designed to eliminate hostility and maintain a safe learning environment.[5] Specifically, the

---

[4] One incident of bullying between Tyler and Trevor occurred at the HCMS Christmas dance. When testifying about the incident, Trevor stated as follows:

Q: Okay. What happened at the Christmas dance in December of '06?
A: I got there and it was fine for a little while. And then I had Tyler Perry and some of his friends following me around saying that they was going to beat me up and – that they was going to beat me up. And I went straight to a chaperone and said I just need to call my parents.
Q: Were you afraid of Tyler Perry?
A: Yes, ma'am.
Q: And would he always have somebody with him?
A: Yes, ma'am.

Frances Reid, the chaperone who Trevor complained to, testified that she alerted other teachers of Tyler's threatening behavior and the chaperones "kept an eye" on the situation. Stacy Tomlinson, another teacher who knew of the incident at the dance testified that she told the HCMS principal "there could possibly be an altercation between [Tyler and Trevor] and that we just made everyone aware." Mrs. Tomlinson testified that the principal responded and that the teachers were handling it "appropriately" at the time.

[5] Susan Hendry, the assistant principal at HCMS for the 2006–2007 school year testified that she

(continued...)

administrators did not assign a complaint manager to investigate Trevor's complaints, nor did they follow disciplinary guidelines for "Category III" offenses. As a result, Trevor was subjected to continued bullying and harassment and the possibility that Tyler would carry out his threats. The Board was not required to foresee the exact manner in which the attack would be carried out in order to be held negligent; however, it was foreseeable that Tyler, a child who had previously exhibited aggressive tendencies, would follow through with the threats he had made throughout the school year.

The Board argues that *Chudasama v. Metro. Government of Nashville and Davidson County*, is analogous to the instant case and necessitates a different analysis and outcome. *Chudasama v. Metro. Gov't of Nashville and Davidson County*, 914 S.W.2d 922 (Tenn. Ct. App. 1995). Although *Chudasama* is somewhat similar to the instant case—a student attacked a fellow student—the facts are distinguishable. In *Chudasama*, a fight broke out in an unsupervised locker room after a teacher dismissed students from his class early in violation of a school rule. *Id.* at 924–25. The court found the coach's negligence in letting the students go to the locker room early insufficient to impose liability on the school system, reasoning that "there is no evidence in the record that [the teacher] was aware of the antagonism between [the children involved in the attack], or that he knew a fight between the two girls was widely anticipated by his students." *Id.* at 925. The history of Tyler's bullying of Trevor distinguishes *Chudasma* from the instant case. Unlike the teacher in *Chudasama*, the HCMS administrators were aware of the history of bullying and that Tyler had threatened to attack Trevor himself or get a friend or his older brother to carry out the attack. In addition, the assault on Trevor was not a locker room fight or a random act but, rather, was the culmination of a course of conduct violative of the school's bullying policy. We affirm the trial court's finding that the attack was foreseeable.

---

[5](...continued)

did not implement the bullying/harassment policy when dealing with the complaints from Trevor and his father. Her testimony regarding the policy is as follows:

> Q: Are you familiar with the bullying and intimidation policy?
> A: Yes.
> Q: Are you familiar that there is supposed to be a complaint manager that handles these?
> A: I would have to look back over that. I'm not as familiar now as I would have been in the past.
> Q: Did you refer this to a complaint manager?
> A: No, ma'am.
> Q: And if there is a policy that says that was the proper procedure, would you admit that you didn't do that?
> A: Yes, because I didn't do that.

## C.    Comparative Fault

Next we consider whether the trial court erred in applying comparative fault in this case, where plaintiffs sued five defendants under theories of negligence and intentional tort.

In its ruling from the bench the trial court stated the following:

> Defendant, Tyler Perry, Bradley Owle, and Renee Dennis are all likewise negligent.  Tyler Perry and Bradley Owle are directly responsible, principal and agent.  Their liability is vicarious.  Joint and several liability in that situation.  Renee Dennis, basically the same thing that – by the terms of the default judgment.
> Now, with regard to comparative negligence/fault, the court assigns the fault of the Houston County Board of Education at 25 percent. . . .
> But the fault here is on the defendants Tyler Perry and Bradley Owle.  They were the actors.  They essentially did this, essentially crime and this tort.  And the court assigns fault to them of 75 percent.  Renee Dennis is vicariously liable for that , and Tyler Perry, of course, is vicariously liable for the acts of his agent, Bradley Owle.
> Now, since the fault of the Board of Education is less that 50 percent, judgment will be entered for the Defendant Houston County Board of Education.

Initially, we find it necessary to clarify the trial court's ruling.  The entire proof at trial was that the assault on Trevor that served as the basis of this suit was an intentional act perpetrated by Bradley Owle in concert with Tyler Perry.[6]  The court correctly held that Bradley was the agent of Tyler and Tyler was thereby responsible for the acts of Bradley.  The trial court was also correct in holding that Renee Dennis, as mother of Bradley, was vicariously liable for his acts.[7]

---

[6] Counsel for the Board acknowledged at argument that Tyler and Bradley were intentional tortfeasors.

[7] The complaint alleged the following with specific reference to Renee Dennis:

> 22.  That the Defendant, Renee Dennis, is the custodial parent/guardian of Bradley Owle and had knowledge of his propensity to commit the acts complained of herein and failed to supervise her son, therefore, she is responsible for the actions of Bradley Owle and liable to the plaintiffs.  This defendant was further negligent for failure to supervise her son.

In analyzing this issue, we again turn to *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73, 85 (Tenn. 2001) for guidance. In *Limbaugh*, the resident, through her conservator, sued both the nursing assistant who assaulted her and the nursing home for negligence. The Court concluded that, "where the intentional actor and the negligent actor are both named defendants and each are found to be responsible for the plaintiff's injuries, then each defendant will be jointly and severally responsible for the plaintiff's total damages." *Limbaugh*, 59 S.W.3d at 87 (citing *Restatement (Third) of Torts* § 24 (1999)). When explaining its reasoning for this holding, the Court stated:

> the legal conception of "fault" necessarily precluded the allocation of fault between negligent and intentional actors because "negligent and intentional torts are different in degree, in kind, and in society's view of the relative culpability of each act." Second, we expressed our concern that allowing comparison would reduce the negligent person's incentive to comply with the applicable duty of care and thus prevent further wrongdoing. Finally, we recognized that when a defendant breaches a duty to prevent the foreseeable risk of harm by a nonparty intentional actor, that negligent co-tortfeasor cannot reduce his or her liability by relying on the foreseeable risk of harm that he or she had a duty to prevent.

*Limbaugh*, 59 S.W.3d at 86–87 (citing *Turner v. Jordan*, 957 S.W.2d 815, 823 (Tenn. 1997)) (internal citations and footnotes omitted). More recently, our Supreme Court summarized its holding in *Limbaugh* as follows: "tortfeasors who have a duty to protect others from the foreseeable intentional acts of third persons are jointly and severally liable with the third person for the injuries caused by the third person's intentional acts." *Banks v. Elks Club Pride of Tennessee 1102*, 301 S.W.3d 214, 220 (Tenn. 2010) (citing *Limbaugh*, 59 S.W.3d 73 at 87 (Tenn.2001); *White v. Lawrence*, 975 S.W.2d 525, 531 (Tenn.1998); *Turner v. Jordan*, 957 S.W.2d 815, 823 (Tenn.1997)).

The Board contends that the holding of *Limbaugh* should not apply here, because in *Limbaugh*, there was only one negligent defendant and one intentional defendant, and in this case, according to the Board, the trial court apportioned fault between two negligent tortfeasors—Renee Dennis and the Board—due to the default judgment entered against Renee Dennis. We do not agree with this characterization of the court's action. To the contrary, the trial court apportioned fault between Bradley and Tyler, the intentional tortfeasors, and the Board, the negligent torfeasor; Renee Dennis was held vicariously liable for the judgment against the boys.[8]

---

[8] The following excerpt from the trial court's bench ruling illustrates that the trial court did not

We do not read *Limbaugh* to limit the application of joint and several liability based on the number of negligent tortfeasors involved. Rather, the holding of that case is that each tortfeasor—intentional or negligent—is responsible for the loss or damage suffered. We find that the trial court erred in applying comparative fault in this case. Here, the harm arising from the attack against Trevor was a foreseeable risk created by the negligence of the Board. The negligent and intentional tortfeasors were parties to the suit and were found responsible for the injuries suffered by Trevor; each is jointly and severally liable for the total amount of plaintiffs' damages. *See Limbaugh*, 59 S.W.3d at 87–88.

## IV. Conclusion

For the foregoing reasons, we affirm the court's finding of negligence on the part of the Board, reverse the holding that the Board is immune from suit and modify the judgment to hold the defendants jointly and severally liable for the damages awarded.

_____
RICHARD H. DINKINS, JUDGE

---

[8](...continued) apportion fault against Renee Dennis as a negligent tortfeasor when allocating the percentages of fault amongst the Defendants:

> But the fault here is on the defendants Tyler Perry and Bradley Owle. They were the actors. They actually did this, essentially crime and this tort. And the Court assigns fault to them of 75 percent. Renee Dennis is vicariously liable for that, and Tyler Perry, of course, is vicariously liable for the acts of his agent, Bradley Owle.