914 S.W.2d 922 (1995)
Darlene CHUDASAMA, Individually, and as Guardian and next friend of Jennifer McCrary, a minor, Plaintiff/Appellant
v.
The METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Defendant/Appellee.
Court of Appeals of Tennessee, Middle Section.
October 11, 1995.
Permission to Appeal Denied January 22, 1996.
*923 Bob Lynch, Jr., Nashville, for plaintiff/appellant.
James L. Murphy, III, Director of Law and William Michael Safley, Dept. of Law of the Metropolitan Government of Nashville and Davidson County, Nashville, for defendant/appellee.
Permission to Appeal Denied by Supreme Court January 22, 1996.

OPINION
CANTRELL, Judge.
Darlene Chudasama sued the Metropolitan Government of Nashville and Davidson County under the Governmental Tort Liability Act, for injuries that her daughter Jennifer McCrary suffered while attending a Metro school. The Circuit Court of Davidson County dismissed the case at the conclusion of the plaintiff's proof. The court found that the incident complained of was not foreseeable, and therefore that the failure of the defendant's supervisory personnel to prevent it was not a proximate cause of the girl's injuries. We affirm.

I. Background
Twelve year old Jennifer McCrary was a seventh grade student at East Middle School. The school had once had a reputation for fighting among its students. According to the principal, East no longer deserves such a reputation. The incidence of fights has been reduced, and for many years has averaged about the same as in other Metro Middle Schools.
The coach for Jennifer's third period gym class was Mr. Fredrick Summral. Mr. Summral was responsible for a mixed class of 25 to 30 boys and girls that met in one of the two gymnasiums at East Middle School. Normal procedure requires that students in gym classes be excused prior to the bell ending the class period, so they can go to the locker rooms and change out of their gym clothes. During the last fifteen minutes of class, Mr. Summral generally allowed his students to participate in free play, or to return to the locker room, without asking for individual permission.
The physical arrangement of the gymnasium that Mr. Summral supervised was a peculiar one. Though the boys' locker room was on the same level as the gymnasium, the girls' locker room was two flights of stairs above it. The entrance to the girls' locker room could not be seen from the gymnasium, nor could sounds from the girls' locker room be heard within the gymnasium. Because the girls' locker room was not regularly monitored, and because its entrance could not be easily observed, it had become a frequent destination for girls who were cutting other classes.

II. The Events of January 12, 1993
On January 12, 1993, Jennifer McCrary asked to be excused to go to the locker room about twenty minutes before the end of class. She told the coach that she had been hit in the stomach by a ball, and needed to go to the bathroom. A girl named Starr entered the locker room at about the same time that Jennifer did. Some other girls were in the locker room, including Tracey Frazier, who was cutting her gym class in the other gymnasium.
Apparently Jennifer and Starr did not get along, and the students anticipated a fight between them. Jennifer denied that she went to the locker room intending to fight with Starr, and Tracey Frazier's deposition indicates that the two girls were in the process of settling their differences without fighting, when another girl, named Cionna *924 Hereford, and some of her friends from Mr. Summral's class entered the locker room. Cionna had previously told Jennifer that she didn't like her. Now she announced that she had come to see a fight, and she was determined to see one. She ordered Starr to hit Jennifer, and threatened to hit Jennifer herself, if the girls did not fight.
Jennifer and Starr refused to fight, so Cionna punched Jennifer twice, threw her down, and starting banging her head against the floor. At this point, Jennifer's account differs somewhat from Tracey's.
Jennifer testified that a group of girls joined in attacking, beating and kicking her, and yelling racial epithets (Jennifer is white; Cionna and her friends are black). Tracey said that she and another girl tried to separate Cionna and Jennifer, but that Jennifer kicked her, making her angry, and that she and Jennifer started fighting. The accounts of both girls agree that after this a group of girls led by Cionna pushed Jennifer into the showers, turned on the cold water, taunted her and threatened to beat her some more if she left the shower room.
One of the girls ran down to the gymnasium to tell Mr. Summral that something bad was happening in the locker room. As he entered the room to check the situation out, the girls poured out the doors, but he was able to question a few of them and prevent them from leaving. He found Jennifer in the shower, soaking wet, crying, her face scratched and bruised. The entire incident had gone on for about fifteen minutes.
Jennifer's mother took her daughter to the hospital. She had numerous scratches and bruises on her body, but no broken bones or internal injuries. Because of continuing anxiety, depression, and nightmares relating to the beating, Jennifer was hospitalized for psychiatric evaluation. After three weeks she was discharged with a diagnosis of post-traumatic stress disorder.
Jennifer was afraid to return to East Middle School, and has transferred to McMurray Middle School, which is much farther from her home, resulting in additional transportation expense for the mother. A psychologist who examined the girl testified at deposition that the stress disorder had largely resolved itself, but that being involved in the legal process tends to perpetuate her post-traumatic symptoms. Jennifer is still under the care of a psychiatrist, who has prescribed Prozac for her, and who has testified that she will need to continue monthly therapy sessions for several years to come.
In the interest of completeness, we note that in the aftermath of the incident Cionna Hereford and four other girls, including Tracey Frazier, were expelled from school for the year. Juvenile charges were lodged against several of the girls, and Cionna had to spend some time in juvenile detention before being released to attend an alternative school.

III. The Role of the Gym Coach
Mr. Summral was initially named as a defendant in this suit, along with Dr. E.M. Ross, the principal of East Middle School, but the individual defendants were dismissed by agreed order, and the case went to trial against Metro Government alone. The plaintiff's theory was that the individual defendants had been guilty of negligent supervision, which was the proximate cause of Jennifer's injuries, and that Metro Government was liable for the negligence of its employees under Tenn. Code Ann. § 29-20-205 of the Governmental Tort Liability Act.
The plaintiffs argued that if the girls' locker room had been adequately supervised on December 12, 1993, Jennifer McCrary would not have been beaten up. While we concede that the presence of a responsible adult in the locker room would probably have prevented the incident, we do not find any negligence in Mr. Summral's failure to more closely monitor the girls' locker room, in light of his concurrent responsibility for the gymnasium and the boys' locker room.
The plaintiffs also contend that Mr. Summral's willingness to allow his students *925 to go to the locker room during the last fifteen minutes of class violated one of the rules of East Middle School, that students "... not leave your spot or the gymnasium without permission," but this is at least debatable. With the benefit of hindsight, we can now see that if Mr. Summral had restrained the girls in his class from going to the locker room for as long as possible on the day in question, Jennifer's ordeal would have been shortened, though it might not have been prevented.
However, even conceding, arguendo, that the coach was negligent in letting his students go to the locker room earlier than he was obliged to, and that his negligence was one of the causes of Jennifer's injuries, the plaintiff must also show that it was foreseeable that injury to a student would occur as a result of the coach's actions in order for liability to attach. See Lancaster v. Montesi, 216 Tenn. 50, 390 S.W.2d 217 (1965).
But there is no evidence in the record that Mr. Summral was aware of the antagonism between Jennifer and Starr, or that he knew a fight between the two girls was widely anticipated by his students. There was also no record of problems between Jennifer and the girls who actually attacked her, and the locker room had previously been the site of only two fights in nine years. It would place an unrealistic burden of foresight upon the teacher to conclude that he should have anticipated the events that occurred.
It is true that Principal Ross testified that whenever students of middle school age are left unsupervised, there is always some possibility of trouble, and the plaintiffs correctly argued that a defendant need not foresee the exact manner in which injury is to occur in order to be held liable for it. See Wyatt v. Winnebago Industries, 566 S.W.2d 276, 281 (Tenn. App. 1977). However, the situation required the coach to allow his students to go to an unsupervised locker room to change clothes in any case. We do not believe that he could have foreseen that by permitting them to leave the gymnasium a few minutes earlier, he would materially increase the risk of harm to the plaintiffs.

IV. The Responsibility of the Principal
Though the plaintiffs did not develop their arguments against Principal Ross, that does not prevent us from analyzing the record to determine if any negligence on his part might render Metro Government liable. Dr. Ross was responsible for the assignment of teachers and students to specific classes, and he exercised supervisory responsibility for safety and security in the school.
The assignment of only one teacher to supervise a gym class of boys and girls makes it inevitable that some students will not be under direct adult supervision during part of every class period. The use of a male gym teacher makes it more likely that the female students will escape observation, and more so where the girls' locker room is physically remote from the gymnasium. One reason we could not find Mr. Summral guilty of negligent supervision was that under the circumstances it was impossible for him to watch all the children all the time. But does this mean that we can find Dr. Ross negligent for failing to assign more teachers to the third period gym class?
The answer is no. In lifting the immunity from suit of governmental entities for negligent acts of its employees, the Governmental Tort Liability Act excepts injury which "[a]rises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not that discretion is abused." Tenn. Code Ann. § 29-20-205(1). The assignment of teachers appears to be just such a discretionary function.
We cannot find Metro Government liable for injuries that may have resulted from Dr. Ross's efforts to allocate the limited resources under his control to meet the broad supervisory and instructional needs of the student body. Though the decision to assign only a single male teacher to a mixed gym class may have been unwise, it is not actionable.

VI.
The order of the trial court is affirmed. Remand this cause to the Circuit Court of *926 Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.
TODD, P.J. (M.S.), and LEWIS, J., concur.