**Edna ANDERSON, Plaintiff–Appellee,**

v.

**CITY OF CHATTANOOGA,**
**Defendant–Appellant,**

**and**

**Jeffrey ANDERSON, Plaintiff–Appellee,**

v.

**CITY OF CHATTANOOGA,**
**Defendant–Appellant.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

April 3, 1998.

Permission to Appeal Denied by
Supreme Court Oct. 19, 1998.

Steven F. Dobson and Stacie L. Caraway, Brown, Dobson, Burnette & Kesler, Chattanooga, for plaintiff-appellee, Edna Anderson.

Jimmy W. Bilbo, Logan, Thompson, Miller, Bilbo, Thompson and Fisher, P.C., Cleveland, for plaintiff-appellee, Jeffrey Anderson.

Phillip A. Noblett and Rosalind H. Reid–Houser, City Attorney's Office, Chattanooga, for defendants-appellants, Chattanooga Police Department.

## OPINION

FRANKS, Judge.

In this action, the Trial Judge entered judgment for plaintiffs against the defendant City and the City has appealed.

This Cases arises from an motor vehicle accident that occurred in Chattanooga on January 12, 1993. Plaintiff Edna Anderson and her son, Jeffrey, had attended a funeral, and while en route to the cemetery in the funeral procession Edna's car which was second from the end in the procession, was struck while traversing the intersection of

McCallie and Holtzclaw, by a motor vehicle operated by Samuel Ledford. The traffic light had turned green for Ledford, and he stated that he did not realize that Anderson's car was part of a funeral procession until after the accident.

It was raining at the time of the accident, and defendant Officer Thomas was escorting the funeral procession and had stopped traffic at the intersection of McCallie and Holtzclaw, but at the time of the accident had left that intersection in order to stop traffic at the next intersection before the procession reached that intersection.

At the Trial, the Judge found in favor of the plaintiffs and assessed liability at 80% for the City of Chattanooga and 20% for Ledford, and further determined that although Officer Thomas was not negligent, the decision to send only one police officer to escort was a negligent act not subject to discretionary function immunity.

Reviewing non-jury negligence cases requires a two-step analysis. *Kelley v. Johnson,* 796 S.W.2d 155 (Tenn.App.1990). The Trial Court's findings of fact are presumed to be correct unless the evidence preponderates otherwise, T.R.A.P. Rule 13(d). This presumption, however, does not apply to the Trial Court's conclusions of law.

Negligence causes of action have three necessary components: (1) a legally recognized duty owed by the defendant to the plaintiff, (2) the defendant's breach of that duty, and (3) an injury proximately caused by the breach. *Kelley,* 796 S.W.2d at 157. The existence and scope of defendant's duty is "exclusively within the court's domain" while issues of breach and causation are "generally questions decided by the trier of fact." *Id.*

In this case, the trial court properly determined that defendant owed a duty to plaintiff. According to the Trial Court, "the duty is that having undertaken to do the job ... the City is obligated to do it adequately and safely." This determination is consistent with traditional principles of tort law. The Restatement (Second) of Torts provides:

One who undertakes, gratuitously or for consideration, to render service to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts, § 324A (1965).

The Trial Court's observation was appropriate. *See Union Park Mem'l Chapel v. Hutt,* 670 So.2d 64 (Fla.1996) (holding that once funeral director undertook to lead a procession, he assumed at least a minimal duty to use good judgment and ensure that the vehicles traveled to the cemetery in a safe manner); *see also* Ronald Schmidt, Annotation, *Liability for Injury or Damages Resulting From Operation of Vehicle In Funeral Procession or In Procession Which Is Claimed to Have Such Legal Status,* 52 A.L.R.5th 155 (1997).

Defendant argues that it had no statutory duty to have an officer at the intersection. In support of this proposition, the Appellant cites T.C.A. § 55–8–183, which governs funeral processions. While § 55–8–183 imposes no specific statutory duties upon the officer to remain at the intersection, that does not mean that the defendant has no duty to provide the escort in a safe manner. As noted, even a gratuitous undertaking may give rise to a duty to protect. Having undertaken to provide an escort for the funeral, the defendant had a duty to provide adequate personnel so that the escort was conducted properly under the circumstances.

The evidence does not preponderate against the Trial Judge's finding that defendant was negligent. The court based its finding of liability upon defendants' failure to "send enough personnel and equipment to do an adequate job." Only one officer was dispatched to escort the funeral. It was raining

during the procession, and thus, not only were the streets more hazardous due to the rain, but other vehicles also had their headlights on, making it difficult to distinguish the funeral procession from other cars. Additionally, Officer Thomas testified that he left the left lane unblocked on McCallie because he had to hurry on to the next intersection.

The trial court properly determined that the decision to send one officer was not protected by discretionary function immunity. T.C.A. § 29–20–205 provides in part:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:

(1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused.

Thus, it is necessary to determine if the challenged conduct was a "planning" decision and therefore immune from suit or whether it was merely an "operational" act to which no immunity attaches. *See Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn.1992). Neither category is capable of precise definition. Rather, the most appropriate analysis is one that considers "(1) the decision-making process and (2) the propriety of judicial review of the resulting decision." *Id.* at 431.

 In this case, the decision to send only one officer to escort the funeral was an operational act. In *Bowers,* the Supreme Court noted that "a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act." *Id.*

Captain Lee Hicks testified that for an average funeral, he would send "one car or one motorcycle, whichever is available." He further stated that one officer "would be actually all that we would send up to 30 or 40 cars." "[A]bove that then it depends on what size it is, where its going, whether or not we would even consider a second vehicle." Thus, Captain Hicks' testimony indicates that the decision to send one car was not based upon an individual assessment of the particu-

lar demands of this funeral, but rather an application of a preexisting policy. *See Kelley v. City of Rockwood,* 1997 WL 671968 at *3 (Tenn.App.) ("an operational decision is one based on preexisting laws, regulations or standards.") Additionally, such a policy need not be written. *Id.*

The City of Chattanooga adopted a written funeral escort policy in 1994 that, according to Captain Hicks, "left no discretion on our part as to what funerals or types of funerals that we would escort." Captain Hicks stated, however, that on the date of the accident, he exercised his discretion about how many officers to send. In *Bowers,* however, the court noted that "to some extent, every act involves discretion." 826 S.W.2d at 431. Since Hicks' determination was based on the size of the funeral and in accordance with preexisting policy, his was an operational act.

The City argues that the trial court's determination conflicts with the holding in *Chudasama v. Metropolitan Government of Nashville and Davidson County,* 914 S.W.2d 922 (Tenn.App.1995). In *Chudasama,* the court determined that a principal's assignment of only one teacher to supervise a co-ed gym class was a discretionary act. The court noted that "[w]e cannot find Metro Government liable for injuries that may have resulted from [the principal's] efforts to allocate the limited resources under his control to meet the broad supervisory and instructional needs of the student body." *Id.* at 925.

Although *Chudasama* is similar to the instant case, it is distinguishable. First, the decision to assign only one teacher was apparently reached after consideration of available resources and institutional needs. Although the City's escort policy may have been initially formulated with similar concerns in mind, the decision to assign only Officer Thomas was a mere application of this policy without individual consideration. Also, in *Chudasama,* the principal's policy-making process culminated in his assigning only one gym teacher. In the instant case, the decision to assign Officer Thomas was not part of the initial policy determination. Rather, the policy was already in place and Captain Hicks simply followed it. Thus,

while *Chudasama* may cover many decisions involving allocation of personnel, it differs from the present case.

The evidence does not preponderate against the Trial Court's finding that Officer Thomas was not negligent. The Trial Court determined that Thomas "was doing probably as well as he could under the circumstances ...". Officer Thomas testified that had there been another escort car, one officer could have remained at the McCallie Avenue intersection while the other one proceeded to the next intersection. Since he was the only escort, Thomas stopped traffic as best he could on McCallie and then headed to the next intersection to attempt to stop traffic before the hearse arrived. Captain Hicks stated that Thomas "did exactly as he should have done."

The parties dispute whether Officer Thomas' actions were planning or operational in nature. It is not necessary to reach this issue, because the Trial Court found that Officer Thomas was not negligent, and there is no liability from which he could be immunized. Moreover, Captain Hicks' decision was an operational act for which the City could properly be liable. "Where two governmental acts are concurrent causes of an injury, one of which arises from a discretionary function, the other of which does not, the exception to the removal of immunity contained in T.C.A. § 29–20–205(1) does not apply." *Bowers*, 826 S.W.2d at 434.

Finally, the evidence does not preponderate against the trial court's determination that Edna Anderson was not negligent. The record shows that she had her headlights on and noticed that traffic at the intersection had stopped to allow the procession through. Additionally, T.C.A. § 55–8–183(1) states:

> The operator of the leading vehicle in a funeral procession shall comply with stop signs and traffic-control signals, but when the leading vehicle has progressed across an intersection in accordance with such signal or after stopping as required by the stop sign, all vehicles of such procession may proceed without stopping regardless of the sign or signal when each of such vehicle has its headlights lighted ...

We affirm the judgment of the Trial Court and remand at appellant's cost.

HOUSTON M. GODDARD, P.J., and WILLIAM H. INMAN, Senior Judge, concur.