FILED
01/08/2024
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 28, 2023 Session

## LARRY KING ET AL. v. TOWN OF SELMER, TENNESSEE

Appeal from the Circuit Court for McNairy County
No. 17-CV-21, 17-CV-20   J. Weber McCraw, Judge

_____

### No. W2023-00390-COA-R9-CV

_____

In this Tennessee Rule of Appellate Procedure 9 interlocutory appeal, we address whether the trial court erred in denying Appellant Town's motion for summary judgment on Appellees' negligence and joint-venture claims. We conclude that the public-duty doctrine shields the Town from liability, and the special-duty exception does not apply. Furthermore, Appellees' "joint venture" claims are simply additional negligence claims seeking to hold Appellant Town liable for the alleged negligence of other defendants. Because the Tennessee Legislature has not waived governmental immunity under such circumstances, Appellant Town's immunity was never removed as to the "joint venture" claims. As such, the trial court erred in denying Appellant Town's motion for summary judgment as to Appellees' negligence and "joint venture" claims.


**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court
Reversed and Remanded**


KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and CARMA DENNIS MCGEE, JJ., joined.

John D. Burleson and Matthew R. Courtner, Jackson, Tennessee, for the appellant, Town of Selmer, Tennessee.

Matthew T. May and Jeffrey S. Rosenblum, Memphis, Tennessee, for the appellee, Larry King.

R. Christopher Gilreath, Memphis, Tennessee, for the appellee, Brittany Johnson.

**OPINION**

## I. Factual and Procedural History

The Rockabilly Highway Revival Festival (the "Festival") occurs annually in the Town of Selmer, Tennessee (the "Town," or "Appellant"). The events giving rise to this case took place during the 2016 Festival. Although the Town helped organize the Festival, it was not the exclusive manager of the event. Part of the Town's contribution to the Festival was to develop a traffic-control plan, which involved closing certain segments of the streets for pedestrian-only use during the Festival. The traffic-control plan involved placing barricades of barrels and sawhorses across streets that were closed for pedestrian use. The Town had used this traffic-control plan from 2008 through 2015 without issue.

On June 11, 2016, during the Festival, 91-year-old Aaron Stamey drove his car through the barricades at a speed of at least 45 miles per hour. Mr. Stamey drove his car over 1,000 feet before fatally striking Sherrie Duncan and Michael Johnson who were standing in the pedestrian-only area.

On June 7, 2017, Larry King, individually and as personal representative of Ms. Duncan's estate, filed a complaint against the Town in the Circuit Court of McNairy County (the "trial court"). Mr. King's complaint also named several other defendants who are not parties to this appeal. Mr. King alleged that the Town was negligent in its development and implementation of the traffic-control plan. Relevant here, Mr. King alleged that under Tennessee Code Annotated section 29-20-205 of the Governmental Tort Liability Act (the "GTLA"), discussed *infra*, the Town's immunity was removed, and it was liable for the negligent acts and omissions of its employees. Mr. King further alleged that none of the exceptions under section 29-20-205 applied. On June 9, 2017, Brittany Johnson, next of kin to Michael L. Johnson (together with Mr. King, "Appellees"), filed a complaint against the Town in the trial court. Ms. Johnson's allegations were similar to those of Mr. King, discussed above. On July 6, 2021, the trial court consolidated Appellees' cases. On August 27, 2021, Ms. Johnson amended her complaint to include a joint-venture claim, discussed further *infra*. On November 8, 2021, Mr. King amended his complaint to include an identical joint-venture claim.

On March 31, 2022, the Town filed a motion for summary judgment. Relevant here, the Town argued that it was immune from Appellees' negligence claims under: (1) the GTLA; and (2) the public-duty doctrine, discussed at length *infra*. As to Appellees' joint-venture claims, the Town alleged that it was also immune to such claims because: (1) the GTLA provides no exception for joint-venture liability; and (2) even if the GTLA provided such exception, there was no joint-venture established here. On June 14, 2022, Appellees filed a joint response.

On August 26, 2022, the trial court heard the motion for summary judgment. By

order of October 31, 2022, the trial court concluded that there were disputed issues of material fact that created genuine issues for trial concerning: (1) Appellees' negligence claims under Tennessee Code Annotated section 29-20-205; (2) the Town's defense under the public-duty doctrine; (3) application of the special-duty exception; and (4) whether there was a common purpose among the Town and other Festival participants to form a joint-venture. Accordingly, the trial court denied the Town's motion for summary judgment as to Appellees' negligence and joint-venture claims.[1]

On November 2, 2022, the Town moved for leave to file an interlocutory appeal under Tennessee Rule of Appellate Procedure Rule 9. On February 6, 2023, Appellees filed a response opposing the Town's motion. By order of March 9, 2023, the trial court granted the Town's motion to seek interlocutory appeal. On March 16, 2023, the Town filed its application to appeal with this Court. By order of May 22, 2023, this Court granted the Rule 9 appeal and certified the following issues for review:

1. Whether the Town is immune under the public duty doctrine ("PDD") from Larry King and Brittany Johnson's negligence claims against the Town?

2. Whether the Town is immune under the Tennessee Governmental Tort Liability Act ("GTLA") from Larry King and Brittany Johnson's joint venture claim against the Town?

## II. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Abshure v. Methodist Healthcare-Memphis Hosps*., 325 S.W.3d 98, 103 (Tenn. 2010). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim, or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015) (italics omitted). Furthermore,

---

[1] We note that Appellees also brought claims against the Town under Tennessee Code Annotated sections 29-20-202, 203, and 204. However, in their summary judgment response, Appellees conceded that the Town's immunity was not removed under these sections of the GTLA. Accordingly, the trial court granted the Town's motion for summary judgment as to Appellees' claims under the foregoing statutes.

"[w]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* [*Ltd. v. Zenith Radio Corp*.], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye*, 477 S.W.3d at 265.

### III. Analysis

### A. Sovereign Immunity, the GTLA, and the Public-Duty Doctrine

A brief overview of the law concerning sovereign immunity, the GTLA, and the public-duty doctrine is helpful before proceeding with our analysis. The doctrine of sovereign immunity has been part of Tennessee common law for well over one hundred years. *Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 59 (Tenn. 2023). Under this doctrine, "the State and its political subdivisions were generally immune from suit." *Id.* However, "sovereign immunity does not bar suit when the government has 'specifically consented to be sued.'" *Id.* (quoting *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360-61 (Tenn. 2011)). Under our Constitution, the Tennessee Legislature is authorized to waive the protections of sovereign immunity, allowing certain suits against governmental entities. *Lawson*, 661 S.W.3d at 59 (citing Tenn. Const. art. I, § 17).

In 1973, the Tennessee Legislature exercised this constitutional authority when it passed the GTLA. *Lawson*, 661 S.W.3d at 59. The GTLA reiterates the common law doctrine of sovereign immunity, *see* Tenn. Code Ann. § 29-20-201(a), but also removes immunity under certain circumstances. *See* Tenn. Code Ann. § 29-20-202(a) (for injuries resulting from the negligent operation of a motor vehicle or other equipment by an employee in the scope of employment); Tenn. Code Ann. § 29-20-203(a) (for injuries caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity); Tenn. Code Ann. § 29-20-204(a) (for injuries caused by dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity); Tenn. Code Ann. § 29-20-205 (for injuries proximately caused by a negligent act or omission of a governmental employee within the scope of employment

- 4 -

with certain exceptions); Tenn. Code Ann. § 29-20-208 (for the purpose of claims against and relief from a governmental entity under the Uniformed Services Employment and Reemployment Rights Act of 1994); Tenn. Code Ann. § 29-20-209 (for causes of action brought under § 39-17-1314(g)-(i) (local regulation of firearms)); Tenn. Code Ann. § 29-20-210 (governmental entity may be liable for damages, injury, or death proximately caused by it intentionally prohibiting or preventing law enforcement or fire and rescue services from accessing a specifically bounded area within the governmental entity's jurisdiction during a public demonstration).

In addition to the GTLA, the public-duty doctrine provides an affirmative defense that may "shield[] a public employee from suits for injuries that are caused by the public employee's breach of a duty to the public at large." ***Ezell v. Cockrell***, 902 S.W.2d 394, 397 (Tenn. 1995). The public-duty doctrine and its special-duty exception, discussed *infra*, survived the GTLA's enactment. ***Chase v. City of Memphis***, 971 S.W.2d 380, 385 (Tenn. 1998). The Tennessee Supreme Court has explained the interplay of the GTLA and the public-duty doctrine, to-wit:

> Courts first look to the GTLA. If immunity is found under the GTLA, a court need not inquire as to whether the public duty doctrine also provides immunity. If, however, the GTLA does not provide immunity, courts may look to the general rule of immunity under the public duty doctrine. If immunity is then found under the public duty doctrine, the next inquiry is whether the special duty exception removes the immunity afforded under the public duty doctrine.
>
> \*\*\*
>
> The special duty exception . . . removes the immunity when:
>
> > (1) a public official affirmatively undertakes to protect the plaintiff and the plaintiff relies upon the undertaking;
> >
> > (2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or
> >
> > (3) a plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

***Chase***, 971 S.W.2d at 385 (citing ***Ezell***, 902 S.W.2d at 402). "Where the special duty exception is found to apply, it operates to negate the public-duty doctrine defense." ***Wells v. Hamblen Cnty.***, No. E2004-01968-COA-R3-CV, 2005 WL 2007197, at *4 (Tenn. Ct.

- 5 -

App. Aug. 22, 2005) (citing ***Matthews v. Pickett Cnty.***, 996 S.W.2d 162, 165 (Tenn. 1999)).  With the foregoing law in mind, we turn to Appellees' claims against the Town.

## B.  Appellees' Negligence Claims Against the Town

In their amended complaints, Appellees alleged that the Town's immunity was removed under Tennessee Code Annotated section 29-20-205, which provides that a governmental entity's immunity is removed "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment[.]" Tenn. Code Ann. § 29-20-205.  There are certain exceptions to this statute, but those exceptions are not at issue in this appeal.[2]  As discussed above, the Town moved for summary judgment on

---

[2] At the time Appellees filed their complaints, Tennessee Code Annotated section 29-20-205 waived immunity for negligent acts or omissions of employees within the scope of employment unless the injury arose out of:

    (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;

    (2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights;

    (3) The issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization;

    (4) A failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property;

    (5) The institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause;

    (6) Misrepresentation by an employee whether or not such is negligent or intentional;

    (7) Or results from riots, unlawful assemblies, public demonstrations, mob violence and civil disturbances;

    (8) Or in connection with the assessment, levy or collection of taxes; or

    (9) Or in connection with any failure occurring before January 1, 2005, which is caused directly or indirectly by the failure of computer software or any device containing a computer processor to accurately or properly recognize, calculate, display, sort, or otherwise process dates or times, if, and only if, the failure or malfunction causing the loss was unforeseeable or if the failure or malfunction causing the loss was foreseeable but a reasonable plan or design or both for identifying and preventing the failure or malfunction was adopted and reasonably implemented complying with generally accepted computer and information system design standards. Notwithstanding any other law, nothing in this

Appellees' negligence claims arguing that: (1) its immunity was not removed under the GTLA; (2), even if its immunity was removed, the public-duty doctrine applied and shielded the Town from liability; and (3) there was no special-duty exception applicable in this case to remove the Town's public-duty immunity. The trial court disagreed and concluded that there were disputed issues of material fact concerning: (1) Appellees' negligence claims under section 29-20-205; (2) the Town's affirmative defense of the public-duty doctrine; and (3) whether a special-duty exception applied to remove any immunity the Town may have under the public-duty doctrine.

## 1.  Whether the Town's Immunity was Removed Under the GTLA

The Town's first issue on appeal is whether it is immune from Appellees' negligence claims under the public-duty doctrine. As discussed above, courts do not engage in a public-duty analysis unless immunity is first removed under the GTLA. *Chase*, 971 S.W.2d at 385. Here, the trial court concluded that there were disputed issues of material fact as to whether the Town was immune under section 29-20-205. Whether the Town maintained its immunity under the GTLA as to Appellees' negligence claims is not at issue in this appeal. "Under Rule 9 of the Tennessee Rules of Appellate Procedure, the issues in a Rule 9 interlocutory appeal are limited to the questions that are certified by the trial court in its order granting permission for the appeal and also certified by the appellate court in its order granting permission for the appeal." *Shaffer v. Memphis Airport Auth.*, No. W2012-00237-COA-R9-CV, 2013 WL 209309, at *3 (Tenn. Ct. App. Jan. 18, 2013) (citing *In re Bridgestone/Firestone*, 286 S.W.3d 898, 902 (Tenn. Ct. App. 2008)). Accordingly, our analysis is limited to the issues that we have certified for review, and we proceed with our public-duty analysis without analyzing whether the Town's immunity was removed under section 29-20-205.[3]

## 2.  Application of the Public-Duty Doctrine

The first question we must answer in our public-duty analysis is whether there is a genuine issue of material fact as to whether the Town owed a duty to the public at large when it contributed to Festival operations. Under Tennessee Rule of Civil Procedure Rule 56.03, the party moving for summary judgment must submit a statement of undisputed facts "to assist the [c]ourt in ascertaining whether there are any material facts in dispute." Tenn. R. Civ. P. 56.03. The statement is a "concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact shall be set forth in a separate, numbered paragraph[, and e[ach] fact

---

> subdivision (9) shall in any way limit the liability of a third party, direct or indirect, who is negligent. Further, a person who is injured by the negligence of a third party contractor, direct or indirect, shall have a cause of action against the contractor.

Tenn. Code Ann. § 29-20-205.

[3] We offer no opinion concerning this issue.

shall be supported by a specific citation to the record." Tenn. R. Civ. P. 56.03. Relevant here, in its statement of undisputed facts, the Town alleged:

> 8. The Town developed the traffic control plan to protect the public that attended the Festival by closing off the roads to prohibit vehicles from driving into the street.
>
> 9. The Town developed the [traffic-control] plan to protect the public—not just [Ms.] Duncan or [Mr.] Johnson.

As support for these alleged facts, the Town cited Fire Chief Anthony Carr's and Police Chief Neal Burks' deposition testimonies. Turning to Chief Carr's deposition, he testified that the traffic-control plan was in place "to protect the festivalgoers." Chief Burks testified that the purpose of blocking off the streets in the traffic-control plan for the Festival was "[f]or the public safety." Specifically, Chief Burks testified that blocking the streets was important to control the traffic to allow for pedestrians to safely walk in the street and to prevent cars from driving where pedestrians walked.

As the party opposing the motion for summary judgment, Appellees were required to submit a "response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for the purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed." Tenn. R. Civ. P. 56.03. If Appellees disputed any fact, they were required to support their dispute with specific citations to the record. Tenn. R. Civ. P. 56.03. In their response to the Town's statement of undisputed facts, Appellees admitted "that a traffic control plan was developed to attempt to prohibit vehicles from driving into the street." However, Appellees disputed "that the traffic control plan was to protect the public at large." As support for this contention, Appellees cited *the same portion of Chief Carr's deposition testimony* that the Town cited, *i.e.,* that the traffic-control plan was in place "to protect the festivalgoers." Because the parties cited the same line of testimony, there is no factual dispute that the Town created and implemented the traffic-control plan to protect the people who attended the Festival. The dispute arises in the parties' interpretations of the term "festivalgoers."

Appellees argue that the "festivalgoers" were a subgroup of people and distinctly separate from the "public at large." As such, Appellees argue that the public-duty doctrine does not apply because the Town owed a duty to the festivalgoers only rather than to the public at large. Appellees' argument presents a distinction without a difference as acknowledged by Appellees themselves in their amended complaints. In his amended complaint, Mr. King pleaded that "[t]he Festival **was advertised to the general public** as a fun, family-friendly event." (Emphasis added). Ms. Johnson also acknowledged the public nature of the Festival in her amended complaint, to-wit:

- 8 -

> The [F]estival grew out of the creation of an outdoor mural celebrating the rockabilly roots of music in the local area. Interest developed to celebrate the rockabilly history of the local area, and a group of like-minded individuals set out to create and put on an outdoor festival, **open to the public**, to promote Selmer's history and local interest with rockabilly music . . . ."

(Emphasis added). We note the general rule in Tennessee "that factual statements in pleadings are judicial admissions being conclusive against the pleader in the proceedings in which they are filed unless they have been amended or withdrawn." *First Tennessee Bank, N.A. v. Mungan*, 779 S.W.2d 798, 801 (Tenn. Ct. App. 1989). Thus, according to Appellees, the class of people (1) who were invited to the Festival, (2) who could attend the Festival, and (3) whom the Town undertook to protect in its planning of the Festival, was the public at large.

> Without citation to any law, in their appellate brief,

> Appellees assert that just because the event was open to anyone to attend, this does not translate into the duty of the Town being that of a duty to the public at large. It is without dispute that the Town and the other Festival presenters invited attendees to come to this special event, implicitly promising them a safe event on a public street. [The Town] attempts to argue that because the event was open to the public the duty was to the public at large. Under that logic, there would never be an exception to the doctrine for police officers inasmuch as they are public servants who generally provide protection to the municipality at large. That is not the purpose of the doctrine.

Contrary to Appellees' argument, this is precisely the policy behind the public-duty doctrine. As discussed in further detail below, this Court has explained that,

> [i]n Tennessee, it has long been held that a plaintiff must show the existence of a duty particular to him or her, as distinct from a duty owed to the public in general.

>> It is settled law in this state that private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally.

> *Ezell*, 902 S.W.2d at 397, quoting *Bennett v. Stutts*, 521 S.W.2d 575, 576 (Tenn. 1975).

> As the Tennessee Supreme Court discussed in *Ezell*, the wide recognition afforded the doctrine is supported by a number of public policy

considerations, particularly in the context of law enforcement. Without the doctrine, police officials could find themselves in the "untenable position of insuring the personal safety of every member of the public, or facing a civil suit for damages." 902 S.W.2d at 398.

*Wells*, 2005 WL 2007197, at *3-4. As discussed above, there is no dispute that the Town created and implemented the traffic-control plan to protect the people who attended the Festival. Given Appellees' allegations in their amended complaints, the undisputed summary judgment evidence, and the well-established law on the public-duty doctrine, we conclude that the festivalgoers and the public at large were one and the same. Thus, the undisputed evidence shows that the Town owed a duty to the public at large when it designed and implemented the traffic-control plan. Accordingly, the public-duty doctrine applied in this case and would provide the Town with immunity from Appellees' negligence claims absent a special-duty exception, to which we now turn. *See Chase* 971 S.W.2d at 385.

### 3. Whether a Special-Duty Exception Existed

The special-duty exception removes immunity under the public-duty doctrine when, *inter alia*, a public official affirmatively undertakes to protect a plaintiff and the plaintiff relies on that undertaking.[4] *Chase*, 971 S.W.2d at 385 (citing *Ezell*, 902 S.W.2d at 402). Our current case law makes clear that the special-duty exception does not apply unless a public employee affirmatively undertakes to protect the plaintiff, *specifically*. In *Chase v. City of Memphis*, the Tennessee Supreme Court explained the precise undertaking required to remove immunity under the special-duty exception. In that case, the administrator of Betty Lou Stidham's estate brought a tort action against the defendant City of Memphis after Ms. Stidham was mauled to death by her neighbor, Edwin Hill's, two pit bull dogs. *Chase*, 971 S.W.2d at 382. In January 1990, prior to Ms. Stidham's death, Mr. Hill's dogs attacked Ms. Stidham's dog, resulting in amputation of the dog's leg. *Id.* Thereafter, Ms. Stidham filed a vicious-animal complaint with the animal shelter, a governmental entity within the City of Memphis. *Id.* On January 23, 1990, Robert Lee, an animal shelter employee, conducted a vicious-animal hearing wherein he concluded that the dogs were "'dangerous' because they were capable of inflicting serious injury." *Id.* In January 1990, Mr. Lee issued a letter to Mr. Hill declaring the pit bulls dangerous. *Id.* Relevant here,

> [t]he letter ordered [Mr.] Hill to correct any fencing deficiencies around his property and ordered [Mr.] Hill to enroll the dogs in a basic obedience training program within ninety days. The letter indicated that failure to comply with the order would result in a declaration that the dogs were vicious

---

[4] As noted above, there are two other special exceptions that could remove a governmental entity's public-duty immunity. Appellees do not argue that either of these exceptions should apply here to remove the Town's immunity under the public-duty doctrine.

and in immediate seizure of the dogs. A copy of the letter was forwarded to [Ms.] Stidham. The pit bulls were released to [Mr.] Hill.

Animal [s]helter employees, including [Mr.] Lee, visited [Mr.] Hill's residence on two occasions to inspect the fencing surrounding [Mr.] Hill's property. During one visit, [Mr.] Lee ordered [Mr.] Hill to keep the back gate locked. [Mr.] Lee apparently inquired whether [Mr.] Hill had complied with the obedience school requirement. [Mr.] Hill had not complied but assured [Mr.] Lee that he would enroll the dogs and notify the [a]nimal [s]helter when obedience training was complete. [Mr.] Hill, however, never enrolled the dogs, and the [a]nimal [s]helter neglected to monitor the situation to assure further compliance. Ms. Stidham was mauled to death by the dogs in June of 1990.

*Id.* at 382-83. Relevant here, the Tennessee Supreme Court concluded that Mr. Lee and the animal shelter "affirmatively undertook to protect [Ms. Stidham]" as evidenced by the letter issued to decedent "indicating that any fencing deficiencies would be corrected[,] . . . that the dogs would be enrolled in obedience training[,] . . . [and that] failure to comply with the [a]nimal [s]helter's order would result in the animals' immediate seizure." *Id.* at 385. The Court further opined that "Ms. Stidham did not appeal the order and relied upon the undertaking of [Mr.] Lee and the [s]helter to remedy the situation." *Id.* Accordingly, the Court held that the special-duty exception applied and that the city's public-duty immunity was removed under same.[5] *Id.*

Conversely, in ***Ezell v. Cockrell***, the Tennessee Supreme Court concluded that the special-duty exception did not apply to remove the city's public-duty immunity. The relevant facts of ***Ezell*** are summarized as follows:

On March 1, 1991, James Hillis and Donna Blankenship were drinking at the Boondocks' Saloon in the City of Elkton in Giles County, Tennessee. At approximately 8:45 p.m., [Ms.] Blankenship left the bar and entered her automobile in the parking lot of the Boondocks' Saloon. She was

---

[5] We note that, in their appellate brief, Appellees argue that "the Supreme Court affirmed that the City had voluntarily undertaken to protect the plaintiff ***and her neighbors***[.]" (Emphasis in original). Although the *trial court* in ***Chase*** concluded that the City "assumed a special duty to Ms. Stidham 'to undertake certain acts which would have protected her and her neighbors from the danger . . . presented by [Mr.] Hill's pit bull dogs," ***Chase***, 971 S.W.2d at 383, the Supreme Court's holding was not so broad. Indeed, the Court held that the City "affirmatively undertook to protect ***the plaintiff***." *Id.* at 385 (emphasis added). The Supreme Court also discussed *Ms. Stidham's* reliance on the City's letter. In the Court's special-duty exception analysis, there is absolutely no mention of Ms. Stidham's neighbors or a duty owed to that group of people. *See id.* As discussed, *infra* footnote 5, in their appellate briefing, Appellees combine the special-duty exception analysis with the GTLA-immunity analysis. It appears that Appellees may have confused these issues in their discussion of ***Chase*** as well.

approached by Chief William Adams of the Elkton Police Department, who asked her to step out of the car. When [Ms.] Blankenship stepped out of the car, Chief Adams concluded that she was too intoxicated to drive. At that point, [Mr.] Hillis came out of the bar and volunteered to drive [Ms.] Blankenship home in her car. According to the plaintiff's complaint, Chief Adams allowed [Mr.] Hillis to drive away in the car when he knew, or should have known, that [Mr.] Hillis was also intoxicated.

Approximately one hour later, [Mr.] Hillis, while driving [Ms.] Blankenship's black Chevrolet Cavalier on the wrong side of the road with the headlights off, collided head-on with a pick-up truck on U.S. Highway 31. As a result of the collision, one passenger in the truck, the plaintiff, Kimberly Ezell, was seriously injured, and another passenger, her husband, Tarrence Ezell, was killed. [Mr.] Hillis was also killed in the collision.

*Ezell*, 902 S.W.2d at 396. Ms. Ezell sued the City of Elkton on various theories of negligence. *Id.* One theory was that "Chief Adams breached a duty owed to the plaintiff when he failed to arrest [Mr.] Hillis and [Ms.] Blankenship for driving under the influence or for public intoxication, and as a consequence of that breach, the plaintiff was injured and her husband killed." *Id.* at 397. Relevant to the issue before us, the Tennessee Supreme Court concluded that Ms. Ezell's allegations did not support a special-duty exception. *Id.* at 403. Specifically, the Supreme Court reasoned that "[n]either Chief Adams nor the City of Elkton had, by their actions, affirmatively undertaken to protect" Ms. Ezell or her husband. *Id.* The Court explained that "Chief Adams never had any contact with the plaintiff; thus, the defendants had taken no action which would have caused the plaintiff to particularly rely upon them for protection." *Id.*

We recall Appellees' argument that "the festivalgoers" were a subgroup of people and that the Town undertook to protect this subgroup only, rather than the general public. This Court has rejected such argument before. In *Holt v. City of Fayetteville*, No. M2014-02573-COA-R3-CV, 2016 WL 1045537, at *1 (Tenn. Ct. App. Mar. 15, 2016), a police officer arrested Misty Shelton and placed her in his police car. Thereafter, Ms. Shelton stole the police car and, while driving at a high rate of speed, collided with the plaintiffs' vehicle. *Id.* Relevant here, the plaintiffs argued that the special-duty exception applied because "by placing [Ms.] Shelton in custody, [the police officer] 'narrowed down the scope of his duty of reasonable care from the public at large down to the class of civilians who were then utilizing roadways' in the City." *Id.* at *5. This Court disagreed and concluded that "[f]or the special-duty exception to apply, the duty must be particular to the *Plaintiffs*, not to a class of individuals of which Plaintiffs happen to be members." *Id.* (emphasis added). We also noted that the plaintiffs in *Holt* could not show reliance on the actions of the police officer whom they alleged was negligent. *Id.*

With the foregoing law in mind, we turn to Appellees' allegations. The allegations in Appellees' amended complaints concerning the special-duty exception differ, so we address them separately. In his amended complaint, Mr. King alleged that "[b]y inviting and in fact encouraging Ms. Duncan to attend the Festival, a special relationship was established between [the Town] and Ms. Duncan," and that the Town "undertook to protect [Ms. Duncan] and she relied on that undertaking to her detriment[.]" However, as noted *supra*, Mr. King also alleged that "[t]he Festival was advertised to the general public." Thus, taking Mr. King's allegations as true and in context, the gravamen of his complaint is that, by inviting and encouraging each member of the public to attend the Festival, the Town established a special relationship with each one of "the festivalgoers," *i.e.,* the general public. Absent from Mr. King's pleadings are any allegation that the Town owed a duty specifically to Ms. Duncan. There is nothing in the complaint from which a reasonable person could infer that that the Town, or its representatives, (1) invited Ms. Duncan, *individually*, to attend the Festival, or (2) undertook to protect Ms. Duncan, *specifically*, when she visited the Festival. As such, there can be no inference that Ms. Duncan relied on any protections that were specific to her.

Even assuming, *arguendo*, that Mr. King pleaded facts sufficient to allege that a public official from the Town undertook to protect Ms. Duncan, *specifically*, in order to survive summary judgment, Mr. King would still have the burden to set forth specific facts, based in evidence, showing such an undertaking. ***Rye***, 477 S.W.3d at 265. In this regard, the instant case differs from the situation in ***Chase*** where the Court concluded that the animal shelter and Mr. Lee undertook to protect the decedent. Specifically, the ***Chase*** Court concluded that the letter Mr. Lee issued to decedent constituted an affirmative undertaking to protect her because it "indicat[ed] that any fencing deficiencies would be corrected[,] . . . that the dogs would be enrolled in obedience training[,] . . . [and that] failure to comply with the [a]nimal [s]helter's order would result in the animals' immediate seizure." ***Chase***, 971 S.W.2d at 385. Here, there is no such evidence to show that the Town, or the Town's representative, undertook to protect Ms. Duncan, *specifically*, when she attended the Festival, and/or that Ms. Duncan relied on that undertaking for her safety.

Turning to Ms. Johnson's amended complaint, it wholly failed to allege that either a public official from the Town or the Town itself undertook to protect Mr. Johnson, *specifically*. Rather, she alleged, *inter alia*, that the Town: (1) "had a duty to maintain public . . . safety"; (2) had a "non-delegable operational duty to provide for the public safety of attendees at the 2016 [Festival]"; and (3) "failed to take reasonable precautions to protect the safety of attendees." On review of Ms. Johnson's amended complaint, she simply alleged that the Town owed a duty to "the festivalgoers," *i.e.,* the general public. As such, Ms. Johnson failed to allege any facts from which one could infer that the Town undertook to protect Mr. Johnson, *specifically*, and that Mr. Johnson relied on that undertaking for his safety when he attended the Festival. As discussed *supra*, in order to survive summary judgment, Ms. Johnson had the burden of setting forth specific facts, based in evidence, showing that the Town or its representative undertook to protect Mr. Johnson and that he

- 13 -

relied on that undertaking for his safety. *Rye*, 477 S.W.3d at 265. Ms. Johnson has failed to provide any such evidence. Consequently, she has not met her burden to survive summary judgment.

Although Appellees argue that the Town established a special relationship with Ms. Duncan and Mr. Johnson, their pleadings and the summary judgment evidence demonstrate otherwise. As noted above, "[t]he special duty exception applies where 'a 'special relationship' exists between the plaintiff and the public employee, which gives rise to a 'special duty' that is more particular than the duty owed by the employee to the public at large." *Wells*, 2005 WL 2007197, at *4 (quoting *Ezell*, 902 S.W.2d at 401). Similar to the plaintiff in *Ezell*, Appellees failed to allege that the Town or the Town's representative had "by their actions, affirmatively undertaken to protect" either Ms. Duncan or Mr. Johnson, *specifically*, as opposed to the protection undertaken for the public at large. *See Ezell*, 902 S.W.2d at 403; *see also* **Kimble v. Dyer Cnty. Tennessee**, No. W2019-02042-COA-R3-CV, 2020 WL 7389381, at *6 (Tenn. Ct. App. Dec. 16, 2020) (concluding that there were no facts alleged in the complaint from which one could infer that a deputy undertook to protect the plaintiff or that the plaintiff relied on anything the deputy said or did). Indeed, Appellees failed to set forth any specific facts in either their amended complaints or at the summary-judgment stage, alleging that, for example, Chief Burks, Chief Carr, or any other representative from the Town had any direct contact with Ms. Duncan or Mr. Johnson much less undertook to protect them. Rather, as indicated by Chief Burks and Chief Carr, in their respective deposition testimonies, the traffic-control plan was developed to protect the festivalgoers, *i.e.,* the public at large, and for general public safety, and was not implemented specifically for Ms. Duncan's or Mr. Johnson's safety. Accordingly, we conclude that no special-duty exception existed to remove the immunity provided to the Town under the public-duty doctrine. Thus, we conclude that the trial court erred when it denied the Town's motion for summary judgment as to Appellees' negligence claims.[6]

## C. Appellees' Joint-Venture Claims Against the Town

The next issue for our review is whether the Town is immune under the GTLA from

---

[6] For completeness, we note the trial court's and Appellees' reliance on *Anderson v. City of Chattanooga*, 978 S.W.2d 105 (Tenn. Ct. App. 1998) to show that a special-duty exception applied here. Importantly, and as the Town notes in its reply brief, the public-duty doctrine was not at issue in *Anderson*. Rather, the question was whether a governmental entity was immune from liability under the GTLA. *Id.* at 108. On our review, it appears that the trial court conflated the analysis for immunity under the GTLA with the analysis for immunity under the public-duty doctrine and the special-duty exception, and that Appellees have improperly combined these analyses in their appellate briefing. Summarily, in determining whether a governmental entity is immune under the GTLA, courts engage in a discretionary/planning versus operational analysis. *See generally Chase*, 971 S.W.2d at 384; *Anderson*, 978 S.W.2d. at 108. Such analysis would have been pertinent in Appellees' briefing had the issue before this Court been whether the Town was immune from Appellees' negligence claims under the GTLA. However, as noted, *supra* at III(B)(1), such issue is not before this Court. Accordingly, Appellees' discussion of operational acts and their reliance on the case law pertaining to same is misplaced.

- 14 -

Appellees' joint-venture claims.[7]  Appellees allege that the Town formed a joint venture with the other Festival defendants when it participated in the planning and operation of the Festival.[8]  As we understand it, Appellees' argument is that their joint venture claims are separate contract claims that do not fall under the GTLA, and that, because our Legislature has allowed joint-venture claims against municipalities such as the Town,[9] Appellees' joint-venture claims should be allowed to proceed to trial.

As discussed, *supra* at III(A), a governmental entity's sovereign immunity is waived only when the Legislature authorizes such waiver.  *See **Lawson***, 661 S.W.3d at 59.  Accordingly, we must determine whether the Legislature has authorized the removal of a governmental entity's immunity under the facts alleged by Appellees.  Turning to the amended complaints, Appellees pleaded identical joint-venture claims, to-wit:

> Defendants individually and collectively combined their efforts, property, money, skill and knowledge, among other assets, to create and carry out the

---

[7] This Court has explained that

> "[a] joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term, or a corporation, and they agree that there shall be a community of interest among them as to the purpose of the understanding, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure."

> Each of the several joint venturers has the power to bind the others and to subject them to liability to third persons in matters which are strictly within the scope of the joint enterprise. 46 Am. Jur. 2d Joint Ventures [§] 57 (1969).

***Robertson v. Lyons***, 553 S.W.2d 754, 757 (Tenn. Ct. App. 1977) (quoting ***Spencer Kellogg & Sons, Inc. v. Lobban***, 315 S.W.2d 514, 520 (Tenn. 1958)).

[8] We note that the identity of the other Festival defendants involved in the alleged joint venture vary in Appellees' amended complaints.  Under the "Causes of Action Against All Festival Defendants" section in Mr. King's amended complaint, he alleged that the Town engaged in a joint venture with the following defendants: (1) McNairy County, Tennessee; (2) Arts in McNairy County; (3) McNairy County Chamber of Commerce; (4) McNairy County Economic Development Commission, Inc.; (5) Rockabilly Highway Revival Festival; and (6) Rockabilly Highway Revival Festival and Car Show.  However, under the "Joint Venture Liability" portion of his amended complaint, Mr. King alleged that the Town formed a joint venture with McNairy Chamber of Commerce and Arts in McNairy only.  In her amended complaint, Ms. Johnson alleged that the Town formed a joint venture with McNairy County Chamber of Commerce and Arts in McNairy only.

[9] For reasons discussed, *infra*, we need not discuss the law surrounding joint-ventures and municipalities.

- 15 -

2016 Rockabilly Highway Revival Festival for their joint profit and/or benefit.

*\*\**

> ***Defendants engaged in such actions and omissions*** concerning the planning and execution of the 2016 Rockabilly Highway Revival Festival ***to create unreasonable risk of harm to festival attendees***, including Plaintiff's decedent Michael L. Johnson, such that ***Defendants' conduct was negligent, grossly negligent, reckless, and/or wanton***.
>
> ***Defendants' conduct was the direct and/or proximate cause of the severe injuries***, harms, losses and/or wrongful death of Michael L. Johnson.
>
> ***As a direct and proximate cause of the negligence of Defendants***, Plaintiff['s] decedent, Michael L. Johnson, suffered catastrophic pain, anguish, injury, and loss of life, in all its forms, in violation of Tennessee law.[10]

(Emphases added). As the foregoing pleadings show, Appellees did not allege that the Town or any other defendant *breached* an alleged joint-venture, *i.e.*, Appellees have not alleged a contract claim. Rather, the above allegations show that Appellees seek to establish a joint-venture between the Town and the other Festival defendants *to hold the Town liable for the alleged negligence of the other Festival defendants*.

Appellees' requested damages underscore that Appellees have simply alleged another negligence claim. In his amended complaint, Mr. King pleaded:

## X. DAMAGES

> 117. All of the damages alleged herein were ***foreseeable consequences of the negligent and wrongful acts*** of each of the named Defendants.
>
> 118. Plaintiff is entitled to recover for the pecuniary value of his daughter's life, and seeks a recovery for his daughter's pain and suffering; emotional pain, suffering and distress; loss of enjoyment of life; loss of earnings and earning capacity; funeral expenses; loss of consortium; and ***all other damages directly and proximately caused by Defendants' negligence and/or reckless acts***.

---

[10] Mr. King's allegations are identical to the above allegations with the exception that his pleading named Ms. Duncan.

119. ***The Defendants' acts of negligence and wrongful conduct were the proximate cause, legal cause and actual cause of the injuries and damages*** described herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays:

a. That each Defendant named herein be liable to Plaintiff for $2,500,000.00. ***With regard to any municipal Defendant, if damages are limited by the Tennessee Governmental Tort Liability Act, Plaintiff seeks the maximum amount permitted by law*** for each such municipality, but no less than $300,000.00.

Similarly, in her amended complaint, Ms. Johnson pleaded:

## VII. WRONGFUL DEATH OF MICHAEL L. JOHNSON

***

77. Plaintiff brings suit for the wrongful death of Michael L. Johnson, asserting damages for the catastrophic pain, anguish, injury, and pecuniary value of his life, ***as well as any other losses directly and proximately resulting from Defendants' negligent, reckless and wanton actions and omissions in violation of Tennessee law***.

## VIII. PUNITIVE DAMAGES

78. Plaintiff repeats and alleges each and every allegation in the paragraphs above as though fully set forth herein.

79. ***Defendants, individually and/or severally, acted with willful, wanton, reckless or intentional conduct, either in acting, or failing to act, as stated in this Complaint***, such that their conduct is subject to punitive damages in an amount to be proven at trial.

(Emphases added). At oral argument before this Court, counsel for Appellees admitted that the above damages do not fall under a contract claim but sound in tort.

Although Appellees have endeavored to circumvent the GTLA by arguing that their joint-venture claims are contract claims, as demonstrated *supra*, the amended complaints show that Appellees have simply pleaded additional negligence claims. Thus, we look to the GTLA to determine whether the Legislature has waived the Town's sovereign immunity in this particular circumstance. It is undisputed that the Festival defendants are

independent legal entities, *i.e.*, (1) McNairy County, Tennessee; (2) Arts in McNairy County; (3) McNairy County Chamber of Commerce; (4) McNairy County Economic Development Commission, Inc.; (5) Rockabilly Highway Revival Festival; and (6) Rockabilly Highway Revival Festival and Car Show. Appellees cannot hold the Town liable for the alleged negligence of another legal entity. As discussed above, section 29-20-205 removes governmental immunity "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment[.]" Tenn. Code Ann. § 29-20-205. While section 29-20-205 makes clear that a governmental entity may be liable for *its employee's* negligent act or omission,[11] the statute does not extend such liability to *a separate legal entity's* negligent act or omission. When applying any statute, a court's duty is to ascertain and fully effectuate the "legislative intent [of the statute], taking care not to broaden [it] beyond its intended scope . . . ." ***Womack v. Corr. Corp. of Am.***, 448 S.W.3d 362, 366 (Tenn. 2014) (citing ***Shore v. Maple Lane Farms, LLC***, 411 S.W.3d 405, 420 (Tenn. 2013); ***Carter v. Bell***, 279 S.W.3d 560, 564 (Tenn. 2009)). The Tennessee Supreme Court has explained that "[o]ur analysis naturally begins with the words used in the statute," ***Womack***, 448 S.W.3d at 366 (citing ***Shore***, 411 S.W.3d at 420), and we must interpret those words under their "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." ***Id.*** (quoting ***Mills v. Fulmarque, Inc.***, 360 S.W.3d 362, 368 (Tenn. 2012)). We also note that, when immunity is removed under the GTLA, "any claim for damages must be brought in strict compliance with the terms of [the GTLA]." Tenn. Code Ann. § 29-20-201(c). Giving the words in the statute their "natural and ordinary meaning," there is simply no language in section 29-20-205 to show that the Legislature intended to remove a governmental entity's immunity so it could be held liable for a separate legal entity's negligence. Because the GTLA does not remove the Town's immunity under these particular facts, the Town's sovereign immunity remains, *see* Tenn. Code Ann. § 29-20-201(a), and it cannot be held liable for the alleged negligent acts or omissions of the other Festival defendants. In short, there is no genuine issue of material fact as to Appellees' "joint venture" claim, and the Town is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. Accordingly, we conclude that the trial court erred when it denied the Town's motion for summary judgment as to Appellees' "joint venture" claims.

---

[11] The GTLA defines "Employee" as

> any official (whether elected or appointed), officer, employee or servant, or any member of any board, agency, or commission (whether compensated or not), or any officer, employee or servant thereof, of a governmental entity, including the sheriff and the sheriff's employees and, further including regular members of voluntary or auxiliary firefighting, police, or emergency assistance organizations;

Tenn. Code Ann. § 29-20-102(2).

## IV. Conclusion

For the foregoing reasons, we reverse the trial court's denial of the Town's motion for summary judgment as to Appellees' negligence and joint-venture claims. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed to the Appellees, Brittany Johnson, and Larry King, for all of which execution may issue if necessary.

s/ Kenny Armstrong<br>
KENNY ARMSTRONG, JUDGE